## H. C. BOST v. JOSEPH MINGUES.

A person is not justified in killing the hog of another because it has repeatedly broken through his fences, and when killed was within his enclosed premises, into which it had broken immediately before, on being driven out of his corn field.

(*Moore* v. *Nixon*, 6 Joun. 293, cited and approved.)

ACTION, tried before *Cloud, J.,* at Fall Term 1869, of ROWAN Court.

The following is the *case* sent up from below:

The plaintiff sued for the killing of a boar by the defendant.

It was in evidence that plaintiff was the owner of an unmarked, white Chester boar; that about the 1st of Oct. 1868, the boar was missing, and has not been since seen by plaintiff. It was further in evidence that he was seen in defendant's pasture field on Wednesday, the day before he was killed; the next day after, plaintiff went to defendant's in search of the boar. It was proved that the boar was valuable as a stock-hog. It was in evidence on part of defendant, that a white, unmarked boar came to his premises shortly after October 1st; that the boar broke through a set of draw-bars, made of sound split white oak bars, 5 to 6 inches broad, an inch and a fourth thick, and five feet high; that the draw-bars furnished communication with defendant's corn field,

where his corn was then growing; that the boar was driven out of the corn field, and the break in the draw-bars was repaired and made good; that the boar again broke through into the corn field, and let in with him a number of defendant's hogs; that the boar was turned out, the break was a third time repaired by the insertion of a quantity of rails and other obstructions, but the boar broke through again, letting into the corn field a number of hogs; that the boar and other hogs destroyed seventy-five bushels of corn, then growing and standing in said corn field. It was further in evidence that the defendant made repeated inquiries to ascertain the owner of the boar, but did not succeed; that he then ordered his hands to drive him off; that in attempting to drive him off with men and dogs, the boar turned upon the hands and the dogs they used for that purpose, and put them to flight on two several occasion, and after driving back the hands and dogs the second time, the boar reared up against the fence around the pasture, where it was 10 or 12 rails, and over five feet high, and pushed the fence down by main force and entered the pasture; that immediately thereupon the defendant caused the boar to be shot.

It was in evidence on the part of the plaintiff, and also on the part of the defendant, that the fence around the pasture field in which the hog was killed, was in some places as low as three feet. It was also in evidence on the part of the defendant, that his fence was generally a five foot fence, and that around the pasture was a new fence, made of new and sound old rails, and then in some places not more than three and a half feet, and on part of the plaintiff, that in some places around the corn field, which was a large field, the fence measured from 4 feet 1 inch to 4 feet 10 inches, by actual measurement; and some panels of the pasture fence were as low as three feet; that the panels by the side of the draw-bars, where the boar broke through, were not higher than four feet, and that there was one place in the fence around which witness said he could have kicked through

with his foot;—the plaintiff measured only the lowest parts.

The defendant requested His Honor in writing, to instruct the jury, if they were satisfied from the evidence that the hog became a nuisance, by breaking into and over the defendant's fence, that the defendant had a right (it being admitted that he was an unmarked hog), after endeavoring to find the owner, to kill the hog when he had just pushed down a good five foot fence. His Honor declined to give the instruction, for the reason that no ground was laid for the instruction asked, and instructed the jury that a lawful fence must be five feet high at all points, and that if the jury found, from the evidence, that the fence was not five feet high at all points, and that the hog was the property of the plaintiff, the defendant had no right to kill the boar, and it would be their duty to find for the plaintiff. The defendant excepted. Under the charge of His Honor the plaintiff had a verdict, and the defendant appealed.

*Boyden & Bailey* for the appellant, in the course of their argument, relied upon *Morse* v. *Nixon*, 8 Jon. 35, *Wadhurst* v. *James*, Cro. Jac. 45, *Leonard* v. *Wilkins*, 9 John, 232.

*B. Craige, contra.*

READE, J. The defendant had no right to kill the hog for what he had already done : that were to take vengeance. Nor had he the right to kill him to prevent an anticipated mischief; for that might never happen. Nor had he the right to kill him for breaking over the fence, to get away from the dogs ; for that was the instinct of self-preservation, incited by the violence of the pursuit.

It is the custom of the country that stock shall run at large ; and because of the unnecessary expense, every owner of stock does not keep a bull or a boar. A few in each neighborhood are sufficient. They are regarded as public conveniences, and are indulged to considerable latitude, in " the freedom of the neighborhood."

The hog in question seems to have been improved stock, a Chester boar, worth $50. From the fact that he was not marked, and was allowed the range, he seems to have been devoted to the service of the public by his liberal owner, and was in no sense a nuisance. To kill such a hog, was an injury to the plaintiff and a loss to the public, and would have been bad neighborship in the defendant, if it were not apparent that the killing was done under considerable provocation, and under the impulse of the moment.

It was plausibly urged for the defendant that, inasmuch as the hog was not marked, and the owner was unknown, he could have no redress for the depredations upon his crop; but that is not so, for the Stray-law gave an ample remedy. To this suggestion it was objected by the defendant, that he could not catch him. It seems that with dogs he could not, but milder means would doubtless have been effective, and they were not tried. His Honor's instructions that the defendant had no right to kill the hog unless his fence were five feet high " all around," did the defendant no injustice, and was more favorable for him than the law allows; for he had no right to kill under the circumstances, if his fence had been five feet all around: *Morse* v. *Nixon,* 6 Jon. 293.

There is no error.

PER CURIAM.                    Judgment affirmed.