## STATE v. OSCAR NEAL.

*Indictment for Cruelty to Animals—Killing Chickens—Defense—Evidence—Instructions.*

1. The fact that chickens killed by a defendant, charged with cruelty to animals, were killed while destroying peas in the garden of defendant's father, and after prosecutor had been warned to keep the chickens from trespassing on the garden, is not a defence to an indictment for cruelty to animals, under Section 2482 of *The Code*, when the killing was wilful.

2. Trespassing chickens could be impounded at common law.

3. The needless killing of chickens is of itself cruelty within the meaning of Section 2482 of *The Code*, though done without torture.

4. Since the enactment of Section 2482 of *The Code* it has been unlawful for one to gratify his angry passions or love for amusement or sport at the cost of wounds and death to any useful creature, and the wilful and needless killing of chickens is none the less cruelty to them when done under an "impulse of anger."

5. Where in the trial of an indictment for cruelty to chickens, by killing them, no aspect of the evidence tended to show that the killing was accidental, it was not error to refuse to instruct the jury that, "if the defendant killed the chickens without any intent to wilfully kill them, he would not be guilty."

6. Where an instruction prayed for is correct in part but incorrect as an entirety, the trial judge is not called upon to dissect it and give so much of it as is good.

7. An averment in a bill of indictment that the defendant did "knowingly, wilfully and needlessly act in a cruel manner towards a certain fowl, to-wit, a chicken, by killing said chicken, the said chicken being a useful fowl," is a sufficiently intelligible charge that the defendant was guilty of cruelty to the useful fowl by needlessly and wilfully killing it.

8. In the trial of an indictment for cruelty to animals by killing chickens, an erroneous instruction that the defendant must have been justified in the killing beyond a reasonable doubt was a harmless error, where there was no evidence tending to show that the defendant was justified.

9. The intent with which one charged with cruelty to animals killed a chicken is immaterial when the killing was needless and wilful.

10. A charge of "needlessly acting in a cruel manner by killing" chickens is a sufficient charge of cruelty and is sustained by uncontroverted proof of impaling one chicken on a sharp stick and beating a hen to death.

11. When a defendant convicted before a magistrate appeals and in the Superior Court an indictment is found, it is immaterial to consider whether the Superior Court or the magistrate had original jurisdiction, as the Superior Court, in any event, had jurisdiction either by the appeal or by the indictment.

INDICTMENT for cruelty to animals, tried before *Norwood*, *J.*, and a jury, at Fall Term, 1896, of STANLEY Superior Court.

Defendant asked the following special instructions:

"(1) That chickens are not embraced in the list of animals authorized to be impounded under our Statute in stock-law territory; and, therefore, if the jury believed that the defendant had notified the prosecutor to keep his chickens from trespassing on defendant's crop, that defendant had made reasonable efforts to prevent the injury to his crop without killing the chickens or otherwise injuring them, but that prosecutor refused or failed to keep up his chickens, and defendant killed them simply to prevent injury to his crop, then the killing would not be wilful, within the meaning of the Statute under which defendant is indicted, and defendant would not be guilty. (Not given.)

"(2) That chickens are not such animals as were allowed to be impounded at common law, and, therefore, if the jury believe that defendant killed them without needless or wilful torture, but simply to prevent them from destroy-

ing his crop, then defendant would not be guilty. (Not given.)

"(3) That, in order to convict the defendant, the jury must find that he wilfully killed the chickens, and that the term 'wilfully' implies that the act was done knowingly and of stubborn purpose. (Given.)

"(4) That, in order to convict the defendant, the jury must find that the killing of the chickens was the development of a preconceived purpose, and not an impulse of anger excited by unexpectedly seeing a repetition of the annoying trespass; and, therefore, if the jury believe that defendant killed the chickens without wilful torture, and without any purpose to do the prosecutor a wilful injury, but simply to prevent injury to his crop, then defendant would not be guilty. (Not given.)

"(5) That the Statute under which defendant is indicted relates only to offenses where the injury is directed against the animal killed or wounded, where there is an intent on the part of the offender to wilfully injure, torture, wound or kill the animal, without reference to the owner of the animal; and, therefore, if the jury should believe that defendant killed the chickens without any intent to wilfully injure, wound or kill the chickens, then he would not be guilty. (Not given.)

"(6) That in no view of the evidence can defendant, J. F. Neal, be found guilty. (Given.)

"(7) That in no view of the evidence can defendant, Oscar Neal, be found guilty. (Not given.)"

The judge refused to give the instructions, except the third and sixth, and defendant excepted. Defendant offered to show that the chickens were eating his peas, and that he killed them to prevent them from destroying the same. The solicitor objected to this evidence, and the objection was sustained, and defendant excepted. The court charged

the jury, among other things, that, in order to acquit the defendant, they must believe from the evidence, beyond a reasonable doubt, that he was justified in killing the chickens, and that he would not be justified if he killed them to prevent the destruction of his crop. Verdict of guilty. Motion in arrest of judgment, on the ground that the indictment failed to allege that the killing of the chickens was by torture, cruelty, wounding or mutilation. Motion overruled, and defendant excepted. Motion for new trial for errors assigned as follows: "(1) That the court erred in refusing to give the first, second, fourth, fifth and seventh instructions asked. (2) That the court erred in charging the jury that the defendant must be justified in killing the chickens, and that he would not be justified if he killed them to prevent the destruction of his crop." Oscar Neal alone was found guilty. He was adjudged to pay a fine of $1.00 and costs, and appealed.

*Messrs. Attorney-General* and *J. M. Brown*, for the State.

*Messrs. Adams & Jerome* and *S. J. Pemberton*, for defendant (appellant).

CLARK, J.: This is an indictment for cruelty to animals, to-wit: Sundry Stanly county chickens, "tame, villatic fowl," as Milton styles them in stately phrase. The prosecutor and defendant lived very near to each other and their chickens were exceedingly sociable, visiting each other constantly. But after the defendants had sown their peas they had no peace, for the prosecutor's chickens became lively factors in disturbing both. The younger defendant, Oscar, as impetuous as his great namesake, the son of Ossian, pursued one of the prosecutor's chickens clear across the lot of another neighbor, one Mrs. Freeman, and

intimidating it into seeking safety in a brush pile pulled it out ignominiously by the legs, and putting his foot on his victim's head, by muscular effort, pulled its head off. Then, in triumph, he carried the headless, lifeless body and threw it down in the prosecutor's yard in the presence of his wife, also letting drop some opprobious words at the same time. The prosecutor was absent. Another chicken Oscar also chased into the brush pile, and, sharpening a stick, jabbed it at said chicken and through him, so that he then and there died, and Oscar, carrying the chicken impaled on his spear, threw it over into the prosecutor's yard. He knocked over another and, impaling it in the same style, also threw its lifeless remains over into the prosecutor's yard, as the Consul Nero caused the head of Asdrubal to be thrown into Hannibal's camp. On yet another occasion Oscar did beat a hen that had young chickens, which, with maternal solicitude, she was caring for, so that she died and the young ones, lacking her care, also likewise perished. The aforesaid Oscar, on other divers and sundry times and occasions, was seen "running and chunking" the prosecutor's chickens. The other defendant, Oscar's father, pro- posed to the prosecutor "to strike a dead line, and each one kill everything that crossed the line." The offer seemed too unrestricted and the cautious prosecutor, whose thoughts were "bent on peace," as much as his chickens were on peas, firmly declined the dead line proposition, but Oscar's father said he "guessed he would do that way." As the evidence limited his proceedings to this declaration of war, without any overt act, a *nol. pros.* was entered as to him, and Oscar was left alone to bear the brunt. "Having," in the lan- guage of Tacitus, "made a solitude and called it peace," he naturally protests against being now charged with the odium and burdens of war, which his Honor has assessed at a fine of $1 and costs.

120—78

Both defendants and Oscar's mother went on the stand. There was no substantial contradiction of the State's evidence, but all three testified that the prosecutor had been notified to keep his chickens out of their pea patch or they would be killed.    This is the "round, unvarnished tale" of the evidence.

The defendant's counsel interposed every consecutive defence fron a plea to the jurisdiction to a motion in arrest of judgment.

The case was tried before a justice of the peace and the defendant appealed.    In the Superior Court a bill of indictment was found by the grand jury and the defendant was tried thereon.    Therefore, in any aspect, there was jurisdiction.    Whether the court acquired it by the appeal or had original jurisdiction by the indictment, it is immaterial to decide.

Chickens come within the very terms of *The Code*, Section 2482, describing the creatures intended to be protected from man's inhumanity, any useful beast, fowl or animal." Pigeons were held to be within it.    *State* v. *Porter*, 112 N. C., 887.

The defendants offered to show by Oscar himself that "he killed the chickens to prevent them from destroying the peas."    This was to show justification and was properly rejected.    The defendants had no more right to destroy a neighbor's chickens when thus found damage *feasant* than they would his cattle.    The remedy is by impounding them till damage paid, or by an action for damage.    Their destruction is not necessary to his rights, *Clark* v. *Keliher*, 107 Mass., 406, which was a case "on all fours" with this for killing a neighbor's chickens while trespassing after notice to keep them up.    In this State, in like manner, it has been held that one has no right to lay poison, though on his own premises, for another's "egg-sucking dog," *Dod-*

*son* v. *Mock*, 20 N. C., 146; nor to kill a "chicken-eating hog" as a nuisance, *Morse* v. *Nixon*, 51 N. C., 293; nor a "breachy-hog" for the same reason. *Bost* v. *Mingues*, 64 N. C., 44. These cases refer to and distinguish *Parrott* v. *Heartsfield*, 20 N. C., 110, where it was held lawful to kill a "sheep stealing" dog about to kill. sheep. This is because of the fact that such animal could not be easily caught and impounded, nor could he be sold for anything to pay damages. In *Johnson* v. *Patterson*, 14, Conn., 1, a very long and learned opinion sustains the proposition that one is not justified in strewing poisoned meal on his premises whereby a neighbor's chickens were killed, though notice was given that this would be done if they were not kept off. It is true, these were actions for damages, and not indictments for cruelty to animals, but if, even in such cases, the trespass is no defence, certainly evidence to show the trespass by an animal was incompetent in an indictment whose gist is merely the fact of cruelty or needless killing. *State* v. *Butts*, 92 N. C., 784.

The first prayer for instruction was properly refused. If this were stock law territory (which is not in evidence) the killing would be none the less wilful. *State* v. *Brigman*, 94 N. C., 888.

The second prayer was also properly refused. Chickens could be impounded at common law, and besides the "needless killing" of the chickens is of itself cruelty, though done without torture. *State* v. *Porter, supra.*

The third prayer, that the jury must find that the defendant "wilfully, knowingly and of stubborn purpose killed the chickens" before they could convict, was given.

The fourth prayer was properly refused. The wilful and needless killing of the prosecutor's chickens was none the less cruelty to them because done on an "impulse of anger." Says Burwell, J., in *State* v. *Porter, supra:*

Since the enactment of this Statute it has been unlawful in this State for a man to gratify his angry passions or his love for amusement and sport at the cost of wounds and death to any useful creature over which he has control.

The fifth prayer, which contained this: "If the defendant killed the chickens without any intent to wilfully * * * kill them, he would not be guilty," was properly refused.

There was no aspect of the evidence tending to show an accidental killing. If the rest of the prayer were correct, it being incorrect as an entirety, the court was not called upon to dissect it and give so much as was good.

The sixth prayer was given, and the seventh, from what has already been said, was properly refused.

The judge stated a correct proposition of law when he told the jury that the defendant was not justified if he killed the chickens to prevent the destruction of his crop, *State* v. *Butts*, *supra*, for he could have prevented it by impounding them, or he could sue for damages. But he erred in telling them that the defendant must prove justification in the killing. The indictment being that the defendant did "knowingly, wilfully and needlessly act in a cruel manner towards a certain fowl, to-wit, a chicken, by killing said chicken, the said chicken being a useful fowl, &c., this (rejecting refinement, *The Code,* Section 1183) is an intelligible charge that the defendant was guilty of cruelty to the useful fowl by needlessly and wilfully killing it." But the burden was on the prosecution to prove the "knowingly, wilfully and needlessly." It was not incumbent on the defendant to prove justification. It is not like the killing of a human being which, if done with a deadly weapon, raises a presumption of malice, *State* v. *Rollins*, 113 N. C., 722; nor yet like the proof of a sale of liquor, which, being shown, the burden devolves upon the defendant to show the license, because it is a matter peculiarly in his own

knowledge, *State* v. *Emery*, 98 N. C., 668; nor like cases where an act is made punishable irrespective of intent in which, the act being shown, the burden shifts to the defendant, *State* v. *Glenn*, 118 N. C., 1194, and it was still greater error to charge that the defendant must prove the matter of justification beyond a reasonable doubt. Even where the burden shifts to the defendant, he needs only to prove it "to the satisfaction of the jury." *State* v. *Ellick*, 60 N. C., 56; *State* v. *Willis*, 63 N. C., 26. But this error in the charge was harmless error, for there was no evidence tending to show that the defendant was justified, and the court properly told the jury that the killing to prevent the destruction of the peas (the only matter in justification relied on) would not justify the defendant. The court might properly have told the jury that, if they believed the evidence, they should find the defendant guilty, for there was no conflict of evidence, and it amounted to that, since there was no evidence which made a legal defence.

In response to the third prayer the court properly instructed the jury that they could not convict unless they found that the defendant "knowingly, wilfully and of stubborn purpose" killed the chickens. This is not a case of "intent," which is an inference of inner motive to be drawn by the jury, *State* v. *Coy*, 119 N. C., 901, but of conduct, cruelty, independent of intent if wilful, and the defendant's own evidence proved that the killing was done wilfully, and the charge being substantially that, if the jury believed the evidence, he was guilty, was correct. *State* v. *Woolard*, 119 N. C., 779; *State* v. *Riley*, 113 N. C., 648.

What has already been said disposes of the motion in arrest of judgment. The defendant understood fully the charge against him, *The Code*, Section 1183. *The Code*, Section 2490, provides that "cruelty" shall be held to in-

clude every act, &c., whereby unjustifiable physical pain, suffering or death is caused. While the indictment is not carefully drawn, and is, indeed, less accurate than the warrant originally issued by the justice, the charge of "needlessly acting in a cruel manner by killing," is a sufficient charge of cruelty, and is sustained by the uncontroverted proof of impaling one chicken on a sharp stick and beating the hen to death.

Affirmed.