## VANDERBILT v. BROWN.

(Filed June 5, 1901.)

1. JUDICIAL SALES — *Commissioners — Confirmation — Title—Eject-ment.*

> A purchaser at a judicial sale acquires no right before confir-mation of the sale.

2. EVIDENCE—*Burden of Proof—Ejectment.*

> Plaintiff in ejectment does not admit the validity of a worthless bond for title. introduced by him in evidence for the pur-pose of shifting to the defendant the burden of showing the better title.

3. EJECTMENT — *Estoppel — Partition — Commissioners — Common Source of Title.*

> Plaintiff in ejectment is not estopped to set up a title derived from a person as heir who had formerly, as commissioner to make partition sale, given bond to convey to defendant.

4. EJECTMENT—*Estoppel.*

> That defendant in ejectment owns an interest in the land in con-troversy does not bar recovery of plaintiff.

5. HUSBAND AND WIFE—*Married Women—Estoppel—Judicial Sales.*

> Married women have no power to agree to an irregular sale of land by commissioners so as to estop them from claiming against title under the sale.

6 INSTRUCTIONS—*Part Erroneous—Part not Erroneous—Trial.*

> Where part of a requested instruction is erroneous, the court may refuse to give the instruction.

7. ISSUES—*Instructions—Trial.*

> A general instruction that plaintiff "can not recover" is improper in this state, as a case is submitted on special issues.

ACTION by G. W. Vanderbilt against Butler Brown, William Sizemore, Andrew Sizemore and T. L. Jenkins, heard by Judge *O. H. Allen* and a jury, at Fall Term, 1900, of the Superior Court of TRANSYLVANIA County. From a judgment for the plaintiff, the defendants appealed.

*Merrimon & Merrimon,* for the plaintiff.
*Geo. A. Shuford,* for the defendants.

CLARK, J. The exceptions by defendants to the introduction of deeds are without merit and it is unnecessary to discuss them. The appellee says in his brief, "When plaintiff rested his case, defendant made the usual motion to nonsuit and the Court made the usual ruling upon it, and defendant made the usual exception." The plaintiff made out a *prima facie* case upon the record as usual and the motion was properly refused.

The issues submitted were the usual ones in ejectment and enabled the defendants to present every phase of the controversy. It was not therefore error to refuse the issue tendered by defendant. *Pretzfelder v. Insurance Co.,* 123 N. C., 164; *Kendrick v. Insurance Co.,* 124 N. C., 315; *Bradley v. Railroad,* 126 N. C., 735.

The plaintiff claims under conveyances, *mesne* or direct, from each of the heirs-at-law of Geo. W. Candler, conveying their respective interests. It was in evidence that in 1867, the heirs of Candler filed a petition for sale for partition, and a decree of sale was made appointing four commissioners, but no further action thereon was had in Court. In 1875 one of the commissioners, T. J. Candler, made a sale of the land in dispute to Lyda and Rabb, giving bond to make title. Rabb assigned to another Lyda. Both Lydas having died, in 1892, said T. J. Candler, "as commissioner," executed a deed to their heirs-at-law. The bond to make

title by one commissioner and the deed by him in 1892 were executed without authority of law and were of no legal effect. On its face, in fact, the deed imports to convey only the interest of the grantor "as commissioner," and not the land itself nor his interest therein. Even if such deed were color of title, there could be no possession under it till its date, 12th of April, 1892, and this action was begun 26th of August, 1896. The defendants acquired no rights by either paper, nor by the alleged sale. In *Attorney General v. Navigation Co.*, 86 N. C., 411, it is said: "The doctrine has been settled in this State, that the bidder at a judicial sale acquired no *right* before the confirmation of the report of the commissioner who made the sale under the order of the Court." *In re Dickerson*, 111 N. C., 114, holds: "The sale then, not having been confirmed, the commissioner's deed has not yet divested the title out of the petitioner. While a formal direction to make title is not always necessary, a confirmation of the sale can not be dispensed with." If this is true when a sole commissioner, or a majority of them, act, *a fortiori* it is true when such act is that of only one commissioner out of four.

Here, there was no report of sale, no confirmation, and no order of Court of any kind subsequent to the order appointing four commissioners. The action of one commissioner was not an obedience to the decree directing sale by four commissioners. The purchasers were bound to take notice of that fact. At the utmost, it was a bond for title for T. J. Candler's interest in 1875, and his conveyance to Lusk, 1879, conveyed the title to another. The plaintiff introduced the bond to make title and the deed executed by T. J. Candler, as commissioner, to show that the defendants claimed title under the same source, and to throw upon them the burden of showing that they had acquired any other title.

The defendants asked eleven prayers for instruction, all of which were refused by the Court, and the defendants excepted.

The plaintiff having introduced the above bond to make title to show that the defendants claim under the same source of title, the first prayer was to instruct the jury that plaintiff is bound by it himself. That is, if we comprehend aright, that when a paper-writing is introduced by plaintiff for such purpose, he thereby admits its validity. We do not so understand the law.

There was evidence that the plaintiff had also taken a conveyance of one-half interest claimed under the University. The second and third prayers were for an instruction that in any event the defendants were not estopped as to that half, and that the plaintiff is estopped to deny that the University owned that half. The purchase by plaintiff of the outstanding claim of the University can have neither of these results.

The fourth prayer is that as plaintiff claimed under deeds from the heirs of Candler, made at a time when Lyda and Rabb were in possession under a bond to make title from T. J. Candler, the plaintiff is estopped as to the interest derived by plaintiff by *mesne* conveyance from T. J. Candler. But no adverse possession is shown in Lyda or Rabb's assignee till 1892, and the mere bond to make title from one commissioner, and without order of court, conferred no title upon them.

The fifth prayer was that if the jury find that the defendants own any interest, the "plaintiff can not recover," for the possession of a cotenant is not unlawful. The prayer "can not recover" is not applicable to our system of submitting a case upon issues. *Witsell v. Railroad,* 120 N. C., 557; *Bottoms v. Railroad,* 109 N. C., 72. Besides, if the defendants were cotenants, that would not defeat a recovery, but merely affect the form of the judgment which would let the plaintiff into possession with defendants.

The sixth prayer was to like purport with the first, that to estop the defendants the bond to Lyda and Rabb must be valid. But it was only offered to show that the defendants claimed under it, and thus place upon them the burden of showing any other title.

The seventh prayer is based on the assumption that Lyda and Rabb entered into possession under the bond for title from T. J. Candler, but there is no evidence to that effect.

The eighth prayer is that if there was an agreement between the commissioners, acquiesced in by the heirs-at-law of G. W. Candler, that each commissioner could sell the land separately, then the sale and bond to make title to Lyda and Rabb by T. J. Candler would be an equitable estoppel upon all the heirs-at-law. As several of the heirs-at-law were married women the prayer was properly refused as asked, and being faulty in part, it was unnecessary for the Judge to dissect it and say what part, if any, was correct. *State v. Neal,* 120 N. C., 613; *Hampton v. Railroad Co., Ibid,* 534; 35 L. R. A., 808.

The ninth prayer was properly refused, for though Mc-Namee is admitted to have been the agent of plaintiff, the information given him was not sufficient to have the legal effect claimed in the prayer.

The tenth prayer was properly refused, for the evidence negatives any adverse possession prior to 1892.

The eleventh general prayer, that upon the evidence the plaintiff "can not recover," was properly refused, and the instruction to the jury, excepted to by defendants, that if they believed the evidence to answer the first two issues "Yes," and the third issue, "One penny," was correct.

Affirmed.

DOUGLAS, J., concurring. While concurring in the judgment of the Court, and substantially in its opinion, I doubt

whether a plaintiff can, in an action of ejectment, set up a worthless bond for title purporting to have been made to some one under whom the defendant is supposed to claim, and thus shift the burden on the defendant of proving his title. It is not even color of title for the defendant, and is not inconsistent with a better title from a different source. If the defendant admits that he holds under the bond, of course he must abide by its legal effect; but if he repudiates it, the burden should remain upon the plaintiff.

It is a well settled principle that a plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of the title of the party in possession.