WILLEFORD v. BAILEY.

(Filed April 21, 1903.)

1. DEPOSITIONS—*Irregularities—Exceptions and Objections.*

Objections to irregularities in the taking of a deposition must be made in writing and passed on before trial.

2. DEPOSITIONS—*Irregularity—Waiver—Appearance.*

An appearance before a commissioner to take a deposition waives any irregularity of the commission.

3. DEPOSITIONS—*Witnesses—The Code, Sec. 1358, Subsec. 4.*

The deposition of a witness adjudged to be unable to talk or remain in court is admissible in evidence.

4. SEDUCTION—*Damages—Instructions—Infants.*

In an action by a father for the seduction of his minor daughter, an instruction that damages could be allowed the father only for a wrong to himself, was properly refused.

5. DAMAGES—*Exemplary Damages—Seduction—Instructions.*

The instruction of the trial judge as to exemplary damages in this case by a father for the seduction of his minor daughter, is not erroneous.

6. JURY—*Trial—Judge—Practice.*

It is not error, though an unusual practice, for the trial judge, in the absence of counsel, to go to the jury room and inquire whether the jury were likely to agree.

ACTION by T. F. Williford against P. S. Bailey, heard by Judge *W. S. O'B. Robinson* and a jury, at October Term, 1902, of the Superior Court of UNION County. From a judgment for the plaintiff the defendant appealed.

*Redwine & Stack,* for the plaintiff.

*Armfield & Williams,* and *Adams & Jerome,* for the defendant.

CLARK, C. J.   This is an action for seduction of plaintiff's 17 year old daughter by the defendant.   The defendant noted 34 exceptions on the trial which he reduced to 28 in making out case on appeal.   In the brief, upon further reflection, his counsel very properly abandoned 14 of these. Of the remaining fourteen it is only necessary to consider assignments of error Nos. 12, 21, 24, 26, and 28, for the others are without merit and need no discussion.

No. 12 was to the admission of a deposition on the ground that the witness was a resident of the County, that no commissioner was named in the notice and no notice was given before the appointment of the commissioner.   If there be any merit in these objections the objection should have been made in writing and should have been passed upon before the trial began.   *Davenport v. McKee,* 98 N. C., 500; *Brittain v. Hitchcock,* 127 N. C., 400.   Besides the objections were cured by the defendant appearing before the commissioner and cross examining the witnesses, without taking any exception to the regularity of the commission.   *Barnhardt v. Smith,* 86 N. C., 473; *Davison v. Land Co.,* 118 N. C., 368.   The witness being adjudged unable to talk and physically unable to remain in court the deposition was admissible.   The Code, Sec. 1358 (4).   The defendant himself introduced the testimony of same witness, taken at another time which was substantially to the same purport.

Assignment of error No. 21 was to the refusal of the following prayer for instruction upon the measure of damages: "You can allow the plaintiff none for wrong to his daughter but only for wrong to himself."

The wrong done to the daughter is the wrong done to the

plaintiff. It is the very essence and basis of the plaintiff's cause of action. In *McClure v. Miller*, 11 N. C., 136, it is said (quoting almost *verbatim* from Lord Eldon in *Bedford v. McKowl,* 3 Esp., 119) : "We can not shut our eyes to the fact that this is an action brought by a parent for an injury to the child." In those cases, as in this, the action was brought by the father. The allegation of loss of services and personal injury is simply an outworn fiction. The action is really for the humiliation, the mental suffering and anguish inflicted by the seducer, and for punishment to the seducer which is brought by the father still if the girl is an infant (*Scarlett v. Norwood,* 115 N. C., 285 ; *Abbott v. Hancock,* 123 N. C., 99) in which it is held that the jury can allow him "punitive damages for the wrong done him in his affections and the destruction of his household," and this is necessarily based upon the wrong done him through her by the deceit and fraud in accomplishing the seduction of the daughter. In *Hood v. Sudderth,* 111 N. C., 215, the court held that if the female was of age she could maintain the action in her own name (a ruling since followed in the decisions in Missouri, Arkansas and other States) for there is, in this last case no foundation whatever for the flimsy fiction of the loss of services. The court certainly could not have given the last part of the prayer "only for wrong to himself," and part of the prayer being improper, the whole may be rejected. *State v. Neal,* 120 N. C., 613 ; 58 Am. St. Rep., 810. The purport of the prayer was that the father could recover only for "loss of services by him," which was clearly a misconception of the purpose of the action.

Assignment of error No. 24. The court was merely giving a contention of plaintiff's counsel, in summing up that if the girl was not with the defendant in Union, S. C., as she testified, the defendant could have introduced evidence to show that it was false. There was no eror in this.

Assignment of error No. 26.   The court charged the jury that if they "should answer the first four issues 'Yes,' should find from the evidence and the greater weight thereof, that the defendant enticed and persuaded plaintiff's daughter against the wishes of her father, to leave her home and go to South Carolina for the purpose of seducing her, and that he harbored and detained her in South Carolina, and while so harboring her, that he seduced and debauched plaintiff's daughter, and if they should further find from the evidence that plaintiff's daughter was an innocent and virtuous woman, of good character, before she left home, and that the defendant is a man of considerable wealth, then they might give plaintiff punitive damages, and in law no verdict they would render would be excessive, for the loss of virtue and the destruction of character are matters that can not be measured in dollars and cents, and the amount of 'smart money' which they might give was entirely with them and within their discretion.   That if they should allow exemplary damages, the amount should be regulated by all the evidence and circumstances in the case and should be based on the character and conduct of the parties to the action, the character of the wrong done—if they should find from the evidence that defendant did entice away and seduce plaintiff's daughter—on the conduct and standing of plaintiff and his family, the financial circumstances of the defendant and on all the facts and circumstances connected with the whole transaction.   That the law left the whole question of the amount of damages to their discretion, but that they should exercise that discretion intelligently and not arbitrarily, nor should they act from prejudice or other improper motive, but that they should render such verdict as should be warranted by the evidence in the case."   In this connection the court also charged that "As to smart money, the amount the jury might

give was entirely within their discretion, after carefully considering all the circumstances of the case."

The charge upon this point must be considered with reference to the context (*Crenshaw v. Johnson,* 120 N. C., at p. 275; *Everett v. Spencer,* 122 N. C., at p. 1011; *Max v. Harris,* 125 N. C., bottom of p. 351; *Marcom v. Railroad,* 126 N. C., 200), and so considered it is unobjectionable. The defendant cut a paragraph in two at a comma, and made it read thus: "If they should further find from the evidence that plaintiff's daughter was an innocent and virtuous woman of good character before she left home and that the defendant is a man of considerable wealth, then they might give plaintiff punitive damages, and in law no verdict they would render would be excessive." Thus substituting a period for a comma and cutting off the balance of that sentence which qualified the excerpt and the immediately succeeding paragraphs which fully explained it. This proceeding is fairly parallelled by the man who proved (to his own satisfaction) that the scriptures declared "There is no God," by striking out the preceding words of the sentence, "The fool hath said in his heart"—

But standing alone the part sentence "and in law no verdict they would render would be excessive," might be misleading, though "the jury act without control on the subject of damages because there is no legal rule by which they can be measured." Sedg. Dam. (5th Ed.), 458, 464; *McRea v. Lilly,* 23 N. C., at p. 119; *Gilreath v. Allen,* 32 N. C., at p. 69. The corrective power is the discretion of the trial judge to set aside the verdict if excessive. And taking the context, as we must, the charge is carefully guarded. There is nothing to indicate that the jury were in fact misled. There was evidence that the defendant was worth $125,000; that he had said he would not have his conduct with the girl known for $15,000; that he was president of an oil and fertilizer

mill, had an interest in a bank, owned a furniture store, a clothing store and other business; had several farms, besides houses in town rented out.   The defendant on the stand did not negative the above estimate of his pecuniary worth, which is always proper matter for consideration in assessing punitive damages.   The defendant stated on cross examination that he was a married man with a family, and was a deacon in the church, that the girl's elder sister (Ida) was at the time living in one of his houses in South Carolina; that he supplied her with a house and all she needed and kept her as his mistress, and had done so for three or four years and that he had pleaded guilty in the trial court at that term to an indictment for fornication and adultery with said sister. There was evidence, if believed, fully substantiating the charge that the defendant conspired with the girl's said elder sister, and through that means enticed plaintiff's younger daughter (Willie) to South Carolina and that there he seduced and debauched her.   The verdict of $5,000 is not one that, in view of this evidence, tends to indicate that the jury was misled by the extract from the charge which was excerpted from its context and set out in the appellant's exception.

The last assignment of error to be considered is this: "About 11 o'clock at night, his Honor, upon being informed that the jury had not agreed, went to the jury room and stated that he had been so informed; that the term of the court had been continued for the trial of this case; that the term at Anson should have opened that morning; that if there was any likelihood of the jury reaching a verdict that night, the court would not retire; but if the jury thought it would not reach a verdict, the court would retire and continue the term for the purpose of seeing if the jury would agree; the court did not urge a verdict, but (said) he would be glad to get an expression from the jury as to whether it would be

likely to agree soon. This was in the absence of the counsel of the plaintiff and defendant." In short, if the jury was likely to agree the judge would sit up to take their verdict and would then leave on that night's train for Wadesboro to open Anson court next morning; and if they were not likely to agree he would go to bed. It was entirely proper to have sent an officer to make the inquiry and it would be no damage (though unusual) for the judge to make the inquiry at the door of the jury room himself. The appellant has printed a sub-head in italics, *"Judge goes into the Jury Room,"* but nothing in the statement of the case justifies that insertion. Even if the judge had gone into the jury room it would not have been error, though it is not advisable practice. *Priest v. State* (Tex. Cr. Aff.), 34 S. W. Rep., 611.

There was no urging the jury to agree, no discussion of the case, no intimation that the judge said anything improper to the jury or influenced them in their verdict. It must affirmatively appear that undue or improper influence has affected the verdict. *State v. Tilghman,* 33 N. C., 513; *State v. Brittain,* 89 N. C., 481. The judgment is

Affirmed.