# SANTA CRUZ ROCK PAVING COMPANY v. LYONS et al.*

## No. 15,760; January 31, 1896.

### 43 Pac. 599.

**Lien for Street Work.**—Evidence That a Husband Signed a Contract for street work in front of a lot the record title to which was in the wife, and stated to the contractors that the lot was community property, will sustain a finding that he was the "reputed owner," within Code of Civil Procedure, section 1191, as amended, providing that any person performing work on a street in front of a lot at the request of the "reputed owner" shall have a lien on the lot for work and materials.

**Married Woman—Separate Property.**—The Presumption that property conveyed to a married woman becomes her separate estate is not conclusive.[1]

*For subsequent opinion in bank, see 117 Cal. 212, 59 Am. St. Rep. 174, 48 Pac. 1097.

[1] Cited in Santa Cruz Rock Paving Co. v. Lyons, 133 Cal. 115, 118, 65 Pac. 330, 331, as part of the history of the case.

Cited and approved in Killian v. Killian, 10 Cal. App. 318, 101 Pac. 808, where it is said that as the community may be vested in either spouse, and its true character determined from the nature of the transaction, without reference as to who retains the title, evidence is admissible tending to establish any facts that may overcome the presumption.

APPEAL from Superior Court, City and County of San Francisco; J. C. B. Hebbard, Judge.

Action by the Santa Cruz Rock Pavement Company against Ellen Lyons and another to foreclose a lien for street work. Judgment for plaintiff and defendants appeal. Affirmed.

Allen, McAllister & Frohman and John B. Carson for appellants; Parker & Eells for respondent.

BELCHER, C.—This action was brought to recover the sum of $482.88, alleged to be due from defendants to plaintiff for setting granite curbs, and grading and paving the street, in front of a certain lot in the city of San Francisco, and to foreclose a lien on the lot for the said sum, together with the cost of verifying and filing the claim of lien and a reasonable attorney's fee. The defendants, James M. and Ellen Lyons, were husband and wife, and had been such for about twenty-one years. It is alleged in the complaint that the defendant Ellen Lyons was at all the times mentioned therein the owner of record of the said lot, and that the same was and is community property; that her husband was the reputed owner of it, and that he requested the plaintiff to do the work while he was such reputed owner; that he entered into a written contract with plaintiff for its performance, "both in his own individual behalf and as the agent of his wife, Ellen, and in her behalf, though in his own name"; that he individually, and on behalf of his wife, promised to pay plaintiff for the work done; and that she "had full knowledge of said contract and of the performance of said work prior to and during the performance of said work, and that she did not within three days after having obtained knowledge thereof, nor at all, give notice that she would not be responsible for the same, by posting a notice in writing to that effect, in some conspicuous place upon said land, nor upon any land, nor at all"; that the plaintiff duly performed all the terms and conditions of its contract, and that the work was completed on August 1, 1892, and was duly accepted by the superintendent of streets; that the amount due plaintiff under the contract was $482.88, no part of which had been paid; and that it filed its claim of lien on August 26, 1892. The defendants answered separately. The answer of Mrs. Lyons denied that the lot in question was the community property

of herself and husband; denied that her husband was ever the reputed owner of the lot; denied that he, as her agent, ever requested the plaintiff to do the work for which it seeks to recover, or ever promised to pay plaintiff for said work, or ever entered into any written contract with plaintiff for the performance of said work, or any work; denied that at any time mentioned in the complaint she had full or any knowledge of the contract mentioned therein, or that she ever agreed to the same; and alleged that she never at any time entered into any contract with the plaintiff for the performance of any street work, or authorized her husband, as her agent, to enter into any such contract; that he has never had any interest in the property affected; and that she at all the times mentioned in the complaint was the sole and separate owner thereof. The answer of Mr. Lyons denied that the said lot is or ever was community property; that he was ever the reputed owner of it, or had any separate interest in or claim upon it; that he ever entered into any contract with the plaintiff, as the agent of his wife, to improve the street in front of the property, or ever promised on her behalf to pay any sum of money for any street work or improvements in front of it; and alleged that he was never authorized by her to enter into any contract with plaintiff for the performance of any street work in front of said lot. Upon the issues thus raised, the case was tried, and the court found, among other things, that, at all the times mentioned in the complaint, the "defendant Ellen Lyons was, and she now is, the owner of the lot of land described in said complaint as her separate property, but at all said times said James M. Lyons, individually, was the reputed owner thereof; that, while said James M. Lyons was so the reputed owner of said lot of land, he requested said plaintiff to do the work hereinafter named, and he, both in his own individual behalf and as the ostensible agent of his wife, Ellen, and in her behalf, though in his own name, entered into a written contract with the plaintiff for the performance of the same, and thereupon, at the request of said defendant James M. Lyons, said plaintiff improved the street in front of and adjoining said lot of land, and, in so doing, did the work and furnished the materials hereinafter mentioned." And, as conclusions of law, the court found that the plaintiff was entitled to recover from the defendant James M. Lyons, individually, the sum of

$482.88, with interest thereon from August 26, 1892, and the cost of verifying and filing its claim of lien, its costs of suit, and an attorney's fee fixed at $50, the whole aggregating $611.22; and that it had a lien on said lot for the said amount. Judgment against Mr. Lyons, and a decree foreclosing the lien, and directing a sale of the lot, were accordingly entered, from which decree, and an order denying their motion for a new trial, defendants appeal.

It is not claimed that the work for which plaintiff seeks to recover was not well and properly done, or that the amount allowed therefor was not justly due from Mr. Lyons, but it is contended that there was no legal obligation resting upon Mrs. Lyons to pay for the work, and hence that the court erred in determining that the amount allowed was a lien on her lot; and, in support of this position, the finding that Mr. Lyons was the reputed owner of the lot, and, as such, requested the plaintiff to do the work, and entered into the contract therefor, is assailed as not justified by the evidence. The lot in question is eighty-seven feet wide, and is situated on the easterly side of Lyon street, between Post and Sutter streets, in San Francisco; and the contract relied on was to set granite curbs (where necessary), and to pave with bituminous rock Lyon street between the other two streets named. The contract was dated June 29, 1892, and purported to be executed by all the lot owners on both sides of the street to be paved, "whose names are hereunto subscribed, with the number of feet frontage of lots represented and owned by each, respectively, set opposite their respective names, each contracting severally," and each for himself, and not one for the others, promising to pay "for the work done in front of his or her own property, respectively," at certain stipulated rates. At the time the contract was signed, a contract to do the work was about to be let under an order of the board of supervisors. The plaintiff corporation desired to obtain a private contract for the work, and to that end sent two of its solicitors (Mr. Robertson and Mr. Gould) to interview the lot owners. The solicitors went out to the block, and met several of the lot owners, and talked the matter over with them. They were all invited into the house of one of the owners, and others were then sent for, and came in. Among others present was Mr. Lyons. The matter was talked over for a considerable time, and Mr. Lyons said he wanted basalt

blocks put down. Mr. Gould told him that the order of the board of supervisors required bitumen. After further talk, according to the testimony of both Robertson and Gould, Mr. Lyons said he could not sign a contract that night. Mr. Gould asked him why, and he said, "I have got somebody else to see." Mr. Gould asked, "Who is it?" and he said, "My wife." Mr. Gould then asked if it was community property, and he said it was, and that he and his wife owned it together. It was then agreed that the parties would meet again the next evening, at the same place. At the meeting on the next evening, Mr. Lyons signed the contract, his name being the fourth in the list of thirteen, and, as he was doing so, Mr. Gould again asked him, "Do you own the property, or does your wife own it?" and he said, "We both own it." Mr. Gould then said, "All right; then you sign your name there." The work was commenced two or three days after the contract was signed, and was completed and approved by the superintendent of streets, and the lien filed, as alleged in the complaint. Mrs. Lyons testified that she purchased the lot about two years after her marriage to Mr. Lyons, and paid for it with money derived from the estate of her first husband, and money raised on mortgages, and that she never authorized her husband to sign the contract, and he never told her he had signed it until after the bill was presented; that she "was under the impression that these people were obtaining it from the city." Mr. Lyons testified that he did not own any real estate or other property, and that he was a carpenter, and used the money he earned to raise his family; and, when asked if he did not put his money into paying off mortgages on this property, he answered that he could not tell where it went; that, when he made a few dollars, he gave it to his wife. He also testified that his wife never authorized him to sign the contract; that he signed it of his own will, with the understanding that he would have time to pay for it; that he thought, according to the agreement, that he would have time to make the payment, and he assumed it as a personal affair; and that he never stated to Mr. Gould or Mr. Robertson that the property was community property, or that he had somebody else to see before he could sign the contract. He further said: "I never mentioned at home that I had signed the contract until after the work was going on. It was after everybody could see that it was started. On

Thursday evening the contract was signed, and on Saturday morning the work was started. I told her that I would have to pay for it; that is all. Q. By the Court: When did you tell her that? A. After the work was started. Q. How long after that? A. Well, probably the next day or two. Q. You told her you had signed the contract? A. Yes, sir; I told her then.''

In 1885, section 1191 of the Code of Civil Procedure was amended so as to read as follows: ''Any person who, at the request of the owner of any lot in any incorporated city or town, grades, fills in, or otherwise improves the same, or the street or sidewalk in front of or adjoining the same, has a lien upon such lot for the work done and materials furnished.'' And in the same year a general law to provide for work upon streets within municipalities was passed (Stats. 1885, p. 147), by which, in section 16, the word ''owner'' was declared to be (for the purpose of this law) ''the person owning the fee, or the person in whom, on the day the action is commenced, appears the legal title to the lots and lands, by deeds duly recorded in the county recorder's office of each county, or the person in possession of lands, lots, or portions of lots or buildings under claim, or exercising acts of ownership over the same for himself,'' etc. In 1887, section 1191, supra, was again amended by prefixing to the word ''owner'' the word ''reputed,'' so that it has since read: ''Any person who, at the request of the reputed owner of any lot,'' etc.

The question then is, What is meant by the words ''reputed owner,'' as used in the code? Counsel for appellants argue that there is no material difference in the meaning of these words and that of the word ''owner,'' as used in the statute; and they say that ''the legislature therefore could not have contemplated anything else by the expression 'reputed owner' than cases where a person contracts for street work who has the apparent title to property by deeds of record, or who has the apparent possession by reason of exercising acts of ownership over the property for himself.'' And hence it is insisted that, as shown by the evidence, Lyons was not, and could not have been, the reputed owner of the lot in question. But, if this theory be true, then it is evident that nothing was accomplished by the amendment, and it might as well not have been made. The Century Dictionary

defines the words "reputed owner" as "a person who has to all appearances the title to and possession of property." Anderson's Law Dictionary defines the same words as "one who, from all appearance, or from supposition, is the owner of a thing; as of property subject to taxation or to assessment for a municipal improvement." And Burrill's Law Dictionary defines the word "reputed" as "considered; generally supposed." And it is added: "This word has a much weaker sense than its derivation would appear to warrant; importing merely a supposition or opinion derived or made up from outward appearances, and often unsupported by fact. The term 'reputed owner' is frequently employed in this sense: 2 Steph. Comm. 206." Prior to 1889 all property acquired after marriage by either husband or wife was presumed to be community property; but in that year section 164 of the Civil Code was amended by adding the provision that, "whenever property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property." These presumptions are, however, only rules of evidence, which can be met and overcome by proofs, except where a right to property is involved which became vested in a third party before the amendment, in which case the presumption is said to be a rule of property as well as of evidence: Jackson v. Torrence, 83 Cal. 529, 23 Pac. 695; Jordan v. Fay, 98 Cal. 264, 33 Pac. 95.

Here it appears, as before stated, that the lot was acquired by Mrs. Lyons after her marriage, and hence the fact that she had the record title was not at all conclusive. It might, nevertheless, have been considered or supposed to be community property. And when Mr. Lyons signed the contract as the owner of it, and stated, as the court below must have believed he did, that it was community property, and was owned by himself and wife together, it would naturally be supposed that he was such owner. We conclude, therefore, that the court was justified by the evidence in finding that, for all the purposes of this case, he was the reputed owner of the lot.

Other questions are very elaborately discussed by counsel, but, in view of the conclusion reached on the first point, they need not be considered. We find no material error in the

rulings of the court, and advise that the decree and order appealed from be affirmed.

We concur: Searls, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the decree and order appealed from are affirmed.