STACY, J., dissenting.
The plaintiff, Hattie Bowman, instituted before the clerk two proceedings for a sale for partition of the lot in controversy. In February, 1916, Lizzie Howard London conveyed to West Howard a deed for said lot, and on the day following West Howard reconveyed a portion of said lot to his mother, Lizzie Howard London. In one of these proceedings West Howard was defendant, and in the other Lizzie Howard London was defendant. Lizzie died intestate in June, 1920, leaving West Howard as her only heir at law, and he was made party defendant in the proceeding originally instituted against her. Upon a plea of sole seizin, the cases were transferred to the civil docket, and when called for trial were consolidated. The issues and the answers thereto are as follows:
"1. Was Charlie Howard, at the time of his death, the owner and seized in fee simple and in possession of the lands described in paragraph one of the petition and amended complaint? Answer: `Yes.'
"2. Is the plaintiff, Hattie Howard Bowman, the sole heir at law of Charlie Howard, deceased? Answer: `Yes.'
"3. Is the plaintiff, Hattie Howard Bowman, the owner and entitled *Page 709 
to the immediate possession of the lands described in paragraph one of the petition and amended complaint? Answer: `Yes.'"
After judgment, the defendant having entered exceptions of record, appealed.
The plaintiff instituted two proceedings for a sale of land for partition. In each petition she alleged that Charlie Howard died intestate in January, 1916, seized and possessed of the lot in controversy, leaving surviving him as his only heirs at law two daughters, the plaintiff and Lizzie Howard London, the defendant's mother, and that the plaintiff and the defendant were tenants in common and entitled each to a one-half undivided interest. The defendant denied the material allegations, alleged that (664) at the time of her death Lizzie held the title in fee, and that the defendant was sole seized. The cases were thereupon transferred to the civil docket, and when they were called for trial the court granted the plaintiff leave to reply. In each case the plaintiff filed a replication, which, in effect, contradicted her former allegation that she and Lizzie were cotenants, and admitted, as the defendant alleged, that Lizzie was not an heir of Charlie Howard. When the replications were filed, the defendant asked leave to amend his answer so as to allege that he was, and the plaintiff was not, Charlie Howard's heir at law. The motion was disallowed, and the defendant excepted. The defendant then moved for leave "to reply to the replies," and excepted to the court's denial of the motion. The next recourse of the defendant — a demurrer ore tenus to the replies — the court held to be unavailing, and again exception was duly entered.
In "A treatise on the Principles of Pleading," page 135, Stephen says: "On the whole, therefore, the author conceives the chief objects of pleading to be these: that the parties be brought to an issue, and that the issue so produced be material, single, and certain in its quality. In addition to these, however, the system of pleading has always pursued those general objects also, which every enlightened plan of judicature professes to regard: the avoidance of obscurity and confusion, of prolixity, and delay." Regard for this familiar principle no doubt moved his Honor to strike out the replications, and to make an order allowing the plaintiff to file a complaint with the usual allegations in ejectment, and allowing the defendant to file an answer thereto. To this order, also, the defendant excepted; *Page 710 
but the court properly resolved to clear away the confusion produced by the inconsistent pleadings. The court, it will be noted, did not change the cause of action. The plea of sole seizin had already converted the proceeding into an action of ejectment (Sipe v. Herman, 161 N.C. 108), and the obvious purpose of the judge was "to bring the parties to an issue." The amended pleadings afforded ample opportunity to safeguard every right these exceptions were intended to preserve. For this reason exceptions 1, 2, 3, and 22 to 25, inclusive, are overruled.
The fourth exception was taken to his Honor's conclusion that in the defendant's original answers there was not sufficient allegation that Lizzie Howard London, mother of the defendant, was an heir at law of Charlie Howard. This ruling was made, however, before the amended pleadings were filed, and was not intended to apply, and by its terms did not apply, to the complaint and answer upon which the consolidated cases were tried. The evidence tended to show that Lizzie was born in Virginia some time before her mother came to North Carolina, and, of course, before she made (665) the acquaintance of Charlie Howard. Indeed, after the amended pleadings were filed the defendant's chief purpose seems to have been to show that the plaintiff was not the heir of Charlie Howard; and the trend of the defendant's evidence and the charge of the court indicate that the defense was based almost entirely on this theory. We are therefore satisfied that in the respect referred to the defendant was not materially prejudiced, and that the fourth exception cannot be sustained.
Exceptions 5 to 12, inclusive, impute error to the admission of D. A. Smith's testimony concerning the boundaries of the lot, up to which Charlie Howard claimed title. The beginning corner of the lot in controversy was "at an iron stake, Duncan Smith's corner." The witness testified that he was the Smith referred to, and knew the location of this corner; that at the time he purchased from McLaurin his land was surveyed; and McLaurin at that time "put down" the corner in controversy as a corner of the land sold to the witness.
Charlie Howard had no paper title. The plaintiff relied upon Howard's alleged adverse possession, and it was particularly important for her to show the "known and visible lines and boundaries" of the lot. The evidence excepted to was competent. Evidence that McLaurin had "put down" the corner was substantive, not hearsay; but if it can be construed as a declaration tending to locate his own land it was contemporaneous with the survey (Cherry v. Slade, 7 N.C. 86); and if as a declaration concerning the corner of an adjoining lot, it was likewise admissible. Mason v. McCormick,85 N.C. 226; Fry v. Currie, 91 N.C. 439. Also, the statement of the *Page 711 
witness that Charlie Howard showed him the "common corner" is entirely too indefinite to constitute reversible error.
Exceptions 13 to 20, inclusive, assail the admissibility of Charlie's and Celie's declarations concerning the paternity of Hattie. There was evidence for the plaintiff which tended to show that Celie and Lizzie, her oldest daughter, were brought from Virginia to Rockingham in 1862; that after the custom of slaves Celie intermarried with Charlie Howard a few years afterward, and that Hattie was born after the marriage. C. S. 2497;Bettis v. Avery, 140 N.C. 187; Erwin v. Bailey, 123 N.C. 628; Long v.Barnes, 87 N.C. 330. If the jury should accept this evidence, the declarations, made ante litem motam by the alleged father and mother, who have since died, were admissible without regard to C. S. 279. Family tradition or pedigree is a recognized exception to the rule which generally excludes hearsay evidence. Hodges v. Hodges, 106 N.C. 374; Rollins v.Wicker, 154 N.C. 560; Turner v. Battle, 175 N.C. 219; Moffitt v.Witherspoon, 32 N.C. 186.
In answer to the question whether he knew the reputed father of Hattie, a witness was permitted to testify over the (666) defendant's objection that he knew her as Charlie Howard's daughter. C. S. 279, is as follows: "When the mother of any bastard child and the reputed father of such child shall intermarry or shall have intermarried at any time after the birth of such child, the child shall in all respects after such intermarriage be deemed and held to be legitimate, and is entitled to all the rights in and to the estate, real and personal, of its father and mother that it would have had had it been born in lawful wedlock."
In the case on appeal it is said: "No contention as to the statute was made by the defendant except as to the construction of the words `reputed father,' which the defendant contended should be construed to mean `actual father.'" The exception is not meritorious. The word "reputed" means considered, or generally supposed, or accepted by general or public opinion. 34 Cyc. 1625; Black's Law Dic. 1022; Pav. Co. v. Lyons, 43 P. 599. In McBride v. Sullivan, 155 Ala. 174, Simpson, J., says: "The use of the word `reputed' was intended merely to dispense with absolute proof of paternity, so that, if the child is `regarded,' `deemed,' `considered,' or `held in thought' by the parents themselves as their child, either before or after marriage, it is legitimate."
The issues were framed so as to present the various contentions of each party; and the theory upon which the defense was conducted indicates that the instruction to which the thirty-first exception was directed is not reversible error. Upon this theory his Honor's charge *Page 712 
as to adverse possession also is approved. The first paragraph of the charge, construing C. S. 279, is free from error, and the second paragraph is sustained by the authorities. McBride v. Sullivan, 155 Ala. supra; 22 C. J. 239; Kelly v. McGuire, 15 Ark. 555. If the brothers or sisters of Charlie Howard bring suit to recover the land, the constitutionality of section 279 may be put to the test, but upon the evidence in this case and the theory of the defense we are at a loss to see how the defendant can invoke the doctrine of vested rights.
The forty-fifth exception is to the refusal of the court to set aside the verdict for alleged misconduct of the jury. Charlie Howard claimed to have had possession of the land for more than twenty years under known and visible lines and boundaries. The court found these to be the facts: Without permission of the court or the consent of counsel, the jury went near the property, and one or two of the jurors walked into the yard, and were told by a woman who was there how far back the lot extended. She said nothing about possession. The jury returned to the courthouse about nine o'clock, and before the court convened the officer in charge remarked in the presence of counsel for each party that the jury had gone over the lot. Approximately four hours elapsed before the verdict was (667) returned, during which counsel had ample time and opportunity to investigate the facts. The court held that the conduct of the jury might have been prejudicial to the defendant, but that the defendant's counsel remained silent when they should have spoken, and denied the motion.
Not in frequently a new trial is granted when jurors, without the authority of the court or consent of the parties, have examined or inspected a place or thing which is the subject of conflicting evidence, but ordinarily the disposition of matters of this kind is within the sound discretion of the court. When the question relates to a juror's misconduct, it is generally within the discretion of the presiding judge to refuse to grant a new trial, if he is satisfied that the verdict should not be set aside. Harrington v. R. R., 157 Mass. 582; Bank v. Burns, 120 N.W. 626;S. v. Tilghman, 33 N.C. 513; Willeford v. Bailey 132 N.C. 408; S. v.Boggan, 133 N.C. 766; S. v. McKenzie, 166 N.C. 296.
We have considered all the exceptions relied on, and find no sufficient cause for disturbing the verdict.
No error.