MINNIE ARMSTRONG MYERS v. DONALD ODELL MYERS

No. 7821DC63

(Filed 19 December 1978)

**1. Bastards § 13— legitimation**

The requirements of G.S. 49-12 and 49-13 for the legitimation of a child born out of wedlock were fully complied with where the father and mother of the child were thereafter married; the father and mother filed the necessary affidavits wherein the father acknowledged that he was the natural father of the child; the father and mother filed a request for a new certificate of birth as

required by G.S. 49-13; the original birth certificate and the marriage certificate were filed with the State Registrar of Vital Statistics; and a new birth certificate was then issued.

2. **Bastards § 13; Divorce and Alimony § 24— legitimation of child—estoppel to deny paternity**

Defendant in a child support action was estopped to deny paternity of the child by his legitimation of the child pursuant to G.S. 49-12 and 49-13 after his marriage to the child's mother where there was no evidence that defendant did not know the consequences of his acts when he filed an affidavit stating he was the "natural father" of the child and no evidence of fraud or other misconduct on the part of plaintiff mother or any other person.

APPEAL by defendant from *Harrill, Judge.* Judgment entered 24 October 1977 in District Court, FORSYTH County. Heard in the Court of Appeals 14 November 1978 in Winston-Salem.

Plaintiff-wife instituted this civil action seeking alimony *pendente lite*, child custody and support, and attorney fees. Defendant answered and counterclaimed for divorce from bed and board. Defendant denied any legal responsibility for the support of Anthony Brian Myers, a minor child born 16 July 1965, after divorce of plaintiff and defendant in 1958 and before they remarried on 7 March 1971. Judgment was entered in favor of the plaintiff on all issues including an order for the defendant to pay weekly support for Anthony Brian Myers, his minor child. Defendant appealed.

*Randolph & Randolph, by Doris G. Randolph, for plaintiff appellee.*

*Morrow, Fraser & Reavis, by Larry G. Reavis, for defendant appellant.*

ERWIN, Judge.

At the hearing of this cause before Judge Harrill, the following evidence was offered by defendant and later excluded by Judge Harrill:

"Defendant testified that Anthony Brian Myers was born on the 16th day of July, 1965; that plaintiff and defendant were not married to each other at the time; that they thereafter married on the 7th day of March, 1971. Defendant further testified that he signed the affidavit contained in 'Re-

quest for New Certificate of Birth' in the legitimation pro-
ceeding of Anthony Brian Myers, that this procedure was
followed and request for new certificate for birth filed at his
own instance.

.    .    .

Anthony Brian Myers is not the defendant's son and that
in fact the defendant was married to someone other than
plaintiff during the year Anthony Brian Myers was born. The
defendant has not told anyone that he is the father of An-
thony Brian Myers. The defendant signed the request for a
new certificate of birth before a Notary Public; however, he
did not swear to the affidavit. The defendant mailed the re-
quest for the new certificate of birth directly to the Bureau
of Vital Statistics; North Carolina Department of Human
Resources; Raleigh, North carolina [sic]. (Paragraph allowed
over plaintiff's objection—later excluded.)

JUDGE'S RULING AND STATEMENT. That after hearing all
of the evidence, I have decided to exclude all testimony and
to hereby exclude all testimony offered by the plaintiff or the
defendant that would tend or tends to controvert or go
behind the closed file relating to the new birth certificate and
application of same, file volume number 65, page 54606, clos-
ed file in the Vital Records Division, North Carolina Depart-
ment of Human Resources."

The court entered the following findings of fact as related to
this appeal:

"[A second child, ANTHONY BRIAN MYERS, was born on the
16th day of July, 1965, a period of time between the two mar-
riages of the parties. Thereafter, plaintiff and defendant filed
affidavit with the Register of Deeds of Surry County on the
2nd day of June, 1976, and request for new birth certificate
for Anthony Brian Myers on DHS Form 1037, Vital Records,
North Carolina Department of Human Resources, acknow-
ledging that defendant was the natural father of the child
and that he had subsequently married the mother. This af-
fidavit and request was filed under the provisions of North
Carolina General Statutes 49-12.]

EXCEPTION NO. 1"

Upon this finding of fact, the court concluded as a matter of law that:

"[Pursuant to File No. Volume 65, Page 54606 closed file in the Vital Records Division, North Carolina Department of Human Resources, sealed legitimation file, Anthony Brian Myers is the legitimated child of the parties hereto. The minor child, Anthony Brian Myers, was legitimated by defendant on the 2nd day of June, 1976, as provided by North Carolina General Statutes 49-12 and 49-13, and defendant is thereby estopped from collateral attack upon said proceeding and from denial of paternity of said child in this proceeding.] EXCEPTION NO. 2"

Defendant contends that the trial court erred in three respects: (1) that his evidence was improperly excluded and should have been considered, (2) that the finding of fact is in error because his evidence was excluded, and (3) the conclusion of law was in error, and had the court considered his evidence, the above finding of fact and conclusion of law would have been found favorable to him. We do not agree.

G.S. 49-12 reads:

"*Legitimation by subsequent marriage.* — When the mother of any child born out of wedlock and the reputed father of such child shall intermarry or shall have intermarried at any time after the birth of such child, the child shall in all respects after such intermarriage be deemed and held to be legitimate and the child shall be entitled, by succession, inheritance or distribution, to real and personal property by, through, and from his father and mother as if such child had been born in lawful wedlock. In case of death and intestacy, the real and personal estate of such child shall descend and be distributed according to the Intestate Succession Act as if he had been born in lawful wedlock."

G.S. 49-13 reads:

"*New birth certificate on legitimation.* — A certified copy of the order of legitimation when issued under the provisions of G.S. 49-10 shall be sent by the clerk of the superior court under his official seal to the State Registrar of Vital Statistics who shall then make the new birth certificate bear-

ing the full name of the father, and change the surname of the child so that it will be the same as the surname of the father.

> When a child is legitimated under the provisions of G.S. 49-12, the State Registrar of Vital Statistics shall make a new birth certificate bearing the full name of the father upon presentation of a certified copy of the certificate of marriage of the father and mother and change the surname of the child so that it will be the same as the surname of the father."

"In part these two sections of our statutes regulate the family circle and define the rights and responsibilities of members of that circle. They must therefore be construed *in pari materia.*" *Carter v. Carter*, 232 N.C. 614, 616, 61 S.E. 2d 711, 713 (1950).

[1] In the case *sub judice*, the record is clear that the minor child was born out of wedlock; that the father of the child and his mother were thereafter married; and that the father and mother filed the necessary affidavits wherein the father acknowledged that he was the natural father of the child. The plaintiff and defendant filed a request for a new certificate of birth proper in form with the necessary information as required by G.S. 49-13. The original birth certificate and the marriage certificate showing the date of remarriage as 7 March 1971 were filed with the State Registrar of Vital Statistics. A new certificate was issued. G.S. 49-12 and 49-13 were fully complied with, and we so hold.

[2] The next question presented is whether the defendant father of the child in question is estopped from collaterally attacking the proceeding set out above and from denial of paternity of the said child in this civil action. We agree with the trial court and answer the question, "yes." There is not any evidence in the record to show that the defendant did not know what he was doing or that he did not know the consequences of his acts when he filed his affidavit stating he was the "natural father" of the child. Defendant does not allege or offer any evidence of fraud or any other misconduct on the part of plaintiff or any other person. It appears to us that the defendant would have known the true facts of the event in question on 2 June 1976 as well as he did on 11 August 1977. Defendant does not offer any reason for giving the affidavit on 2 June 1976 nor does he offer any reason for changing his position to repudiate the affidavit.

The judgment is

Affirmed.

Judges PARKER and MARTIN (Robert M.) concur.