ANNETTE LOFTIN CHAMBERS v. SAMUEL C. CHAMBERS

No. 798DC180

(Filed 16 October 1979)

1. **Bastards § 13— acknowledgment that husband not father of wife's child—legitimation statute—husband not reputed father**

   In an action for child custody and support, the parties' acknowledgment that defendant husband was not the natural father of plaintiff wife's child, who was born before the parties married, negated any inference that defendant was the "reputed" father within the meaning of G.S. 49-12.

2. **Bastards § 13— husband not father of wife's child—issuance of new birth certificate—ineffective method of legitimation**

   Where a child, who is born prior to the mother's marriage, is known to have been fathered by one other than the husband, G.S. 49-13, providing for issuance of a new birth certificate upon legitimation by subsequent marriage of the mother and reputed father, is inapplicable, adoption being the only mode available for legally recognizing the husband as the father.

3. **Bastards § 13; Divorce and Alimony § 24— new birth certificate—false affidavit of paternity—estoppel to deny paternity in support proceeding**

   Despite the fact that defendant husband apparently made a false affidavit of paternity in obtaining a new birth certificate for plaintiff wife's child under G.S. 49-13, he was estopped from collaterally attacking his admission of paternity in this proceeding for child support.

APPEAL by defendant from *Jones (Arnold O.), Judge.* Judgment entered 6 December 1978 in District Court, LENOIR County. Heard in the Court of Appeals 26 September 1979.

Plaintiff wife instituted this civil action seeking alimony *pendente lite*, child custody and support, permanent alimony and

attorney's fees. Plaintiff alleged in her complaint that defendant had abandoned her and had failed to provide her or the child born of their marriage with any support following the abandonment. Defendant's answer denied the essential allegations of the complaint, including that he was the father of plaintiff's infant child, and alleged that the child was born prior to the marriage of plaintiff and defendant and that the child had not been adopted by defendant. Judgment was ordered dismissing the plaintiff's alimony action, but ordering the defendant to pay $25.00 a week for the support of the infant child and $150.00 in attorney's fees for the plaintiff. Defendant appealed.

*Gerrans and Spence, by William D. Spence, for plaintiff appellee.*

*Joseph C. Olschner for defendant appellant.*

WELLS, Judge.

The principal issue before us for decision in this case is to be found in the following conclusion of law made by Judge Jones:

> That by virtue of the marriage of plaintiff and defendant, the infant child Terrica Laverne Chambers, became legitimate pursuant to NC GS 49-12 and the defendant therefore became liable for her support.

G.S. 49-12 reads as follows:

> *Legitimation by subsequent marriage.* — When the mother of any child born out of wedlock and the reputed father of such child shall intermarry or shall have intermarried at any time after the birth of such child, the child shall, in all respects after such intermarriage be deemed and held to be legitimate . . . .

The evidence before Judge Jones shows that the plaintiff was the mother of the infant child, Terrica Laverne Chambers, and that child was born on 20 October 1974 prior to the marriage of plaintiff and defendant on 19 April 1975; that following the marriage of plaintiff and defendant, defendant accepted the infant child as his own and held himself out generally to be the father of said child, and that in October 1975 defendant signed a request for a new certificate of birth for said child in which he

Chambers v. Chambers

acknowledged that he was the child's natural father. Based on that request, a new birth certificate was issued showing the defendant to be the father of Terrica Laverne Chambers. The evidence also showed that the infant child had always known the defendant to be her father and had always called him "Daddy".

G.S. 49-13 reads:

*New birth certificate on legitimation.* — A certified copy of the order of legitimation when issued under the provisions of G.S. 49-10 shall be sent by the clerk of the superior court under his official seal to the State Registrar of Vital Statistics who shall then make the new birth certificate bearing the full name of the father, and change the surname of the child so that it will be the same as the surname of the father.

When a child is legitimated under the provisions of G.S. 49-12, the State Registrar of Vital Statistics shall make a new birth certificate bearing the full name of the father upon presentation of a certified copy of the certificate of marriage of the father and the mother and change the surname of the child so that it will be the same as the surname of the father.

In *Carter v. Carter*, 232 N.C. 614, 616, 61 S.E. 2d 711, 713 (1950), our Supreme Court held that G.S. 49-12 and G.S. 49-13 regulate the family circle and define the rights and responsibilities of members of the circle, and that these two sections of our statutes must be construed *in pari materia.*

From and after the marriage of the mother and the reputed father of an illegitimate child, such child shall be deemed and held to be legitimate just as if it had been born in lawful wedlock. In a divorce action the father of a child of the marriage may be required to support such child.

The plaintiff argues that even though the parties in this case had stipulated that defendant was not the *biological* father of the child, the defendant was nonetheless the "reputed" father of the child within the meaning of G.S. 49-12. Our Supreme Court, quoting from *Bowman v. Howard*, 182 N.C. 662, 666, 110 S.E. 98, 100 (1921), stated in *Carter v. Carter, supra*, 232 N.C. at 617, 61 S.E. 2d at 713:

The use of the word "reputed" rather than "putative" in G.S. 49-12 "was intended merely to dispense with absolute proof of paternity, so that, if the child is 'regarded,' 'deemed,' 'considered,' or 'held in thought' by the parents themselves, as their child, either before or after marriage, it is legitimate."

[1] If the husband reasonably believes he is the natural father of the child, the statute permits legitimation without the need to resort to a formal judicial determination of paternity. In *Carter*, however, the trial court had made a finding of fact that the defendant was the *putative* as well as the reputed father of the child in need of support. In the case *sub judice* the stipulation by the parties that defendant was not the biological father negates any contention that defendant is the natural father whether or not the couple had represented to the community or the child herself that he was. That the parties themselves acknowledged defendant is not the natural father likewise negates any inference defendant is the "reputed" father within the meaning of G.S. 49-12.

[2] Clearly, the procedure for the legitimation under G.S. 49-12 and issuance of a new birth certificate under G.S. 49-13 is not meant to circumvent the provisions for adoption under Chapter 48 of the General Statutes. Legitimation changes the legal relationship of the father and child, creating certain responsibilities and privileges, and allowing the father to inherit from the child and vice versa. Where the husband may reasonably believe he is the natural father, adoption is unnecessary and upon marriage to the child's mother he may proceed under G.S. 49-13 to have a new birth certificate issued to the child indicating he is the natural father. However, where the child is known to have been fathered by an individual other than the husband G.S. 49-13 is inapplicable, adoption being the only mode available for legally recognizing the husband as the father. Upon adoption, application can be made for a new birth certificate under G.S. 48-29. "Adoption is the establishment of the relation of parent and child between persons not so related by nature." 3 Lee, N.C. Family Law § 255, p. 205 (1963).

[3] In any event, despite the fact that defendant apparently made a false affidavit of paternity in obtaining a new birth certifi-

cate for the child under G.S. 49-13, we hold that he was estopped from collaterally attacking his admission of paternity in this proceeding for support. In *Myers v. Myers*, 39 N.C. App. 201, 249 S.E. 2d 853 (1978), *disc. rev. denied*, 296 N.C. 736, 254 S.E. 2d 178 (1979), this Court held that a defendant in an action for support who had sought and received a revised birth certificate under G.S. 49-13 in which he, under oath, represented himself to be the natural father of the child in need of support, was estopped from collaterally attacking the child's legitimation. We noted in *Myers* that the record contained no evidence to show that the defendant did not know what he was doing or that he did not know the consequences of his acts when he filed his affidavit stating he was the natural father of the child. The same is true in the case at bar.

Defendant has challenged the portions of the order awarding child support and attorney's fees. The trial court made sufficient findings with respect to the dependence of the child and the ability of the defendant to provide support. The record also indicates that the trial court made sufficient findings to justify the awarding of counsel fees pursuant to G.S. 50-13.6.

The judgment of the trial court is

Affirmed.

Judges ARNOLD and WEBB concur.