**In Re the Marriage of: Keith Markward BERRISFORD, petitioner, Appellant,**

v.

**Katherine Ann BERRISFORD, Respondent.**

No. 82–62.

Supreme Court of Minnesota.

Aug. 13, 1982.

Dudley & Smith and Mark Labine, St. Paul, for appellant.

Raebern B. Hitchcock, St. Paul, for respondent.

PETERSON, Justice.

In this action for dissolution of the marriage of appellant, Keith Berrisford, and respondent, Katherine Berrisford, the trial court denied appellant's motion for an order requiring the parties and Charity Constance Berrisford, born a few months after the parties' marriage, to submit to blood tests following appellant's denial of the child's paternity. We have concluded that under the circumstances of this case the motion should have been granted.

Appellant and respondent were married on May 19, 1978. Charity was born August 25, 1978. Appellant then signed an applica-

tion for a birth certificate for the child and until October 1979 by his own admission assumed the role of her father. On October 29, 1979, he commenced this action, alleging in his petition for dissolution of the marriage that Charity was a child "born of this marriage" and requesting her custody. Respondent counterpetitioned for dissolution of the marriage, alleging also that Charity was a child born of the marriage and seeking her custody and that of a then unborn child. Both parties verified their petitions and at various times prior to February 1980 averred in motions and affidavits that appellant was Charity's father. At that time he represented in an affidavit that "it is an admitted fact that Charity is not his child." He did not contest a temporary order issued in March 1980 which continued temporary custody of the child in respondent but gave him specific visitation rights and determined that he did not then have the ability to pay child support.

In August 1981, a year and a half later, appellant moved for an order directing that the parties and Charity submit to blood tests; in an accompanying affidavit he stated that he had been willing to accept the child "as his own," but had been deprived of visitation and by that time felt that "it would be in the best interests of the child and the Petitioner and Respondent if no further relationship were attempted between the parties."

The trial court denied this motion on the ground that appellant had signed sworn declarations of biological parentage which complied with Minn.Stat. § 257.34 (1980) and under subdivision 2 of this statute these declarations are "conclusive evidence of all the matters stated therein."

On October 27, 1981, two weeks prior to the trial date, appellant moved to amend his dissolution petition to allege that only Christopher Berrisford, a child born in April 1980, was his child. The trial court denied that motion also. At trial both parties testified that Charity was not appellant's child, but the trial court determined in the order dissolving the parties' marriage that both children were born of the marriage. Conse-

quently he imposed on appellant the obligation of supporting both children. In a memorandum accompanying this order the trial court again stated that appellant had complied with Minn.Stat. § 257.34 (1980) and added that the parties appeared to have perjured themselves in giving testimony "diametrically opposite" their prior sworn declarations, that appellant's conduct toward Charity had demonstrated his responsibility for the child, and that appellant had not proved by clear and convincing evidence that he was not the child's father.

Appellant then moved alternatively for a new trial, an order reopening the judgment to obtain blood tests and present their results as evidence to prove that he was not the father of Charity, or an order amending the dissolution order to exclude all reference to the child. He appeals from denial of this motion.

■ We have concluded that the reasons given by the trial court for holding that blood tests should not be required are not sufficient. The record requires the conclusion that Minn.Stat. § 257.34 is not applicable. Section 257.34, subd. 1 (1980) does provide that the mother and father of an illegitimate child may, "in a writing signed by both of them before a notary public, declare and acknowledge under oath that they are the biological parents of the child," and subdivision 2 states that such a declaration "shall be conclusive evidence of the matters stated therein." This statute is not applicable to the written declarations made by appellant, however, because the legislature expressly provided that the effective date of section 257.34, originally § 3 of Act of April 14, 1980, ch. 561, 1980 Minn.Laws 775, was the day following final enactment of ch. 461. See, Act of April 14, 1980, ch. 561, § 15, 1980 Minn.Laws 775, 781. Appellant signed no sworn written declaration that he was Charity's parent on or after the effective date of the statute.

■ We have concluded also that the parties' apparent perjury is no reason to foreclose the use of blood tests. Instead, it underscores the need for more reliable evidence on the issue of whether appellant is

the child's father. We have stressed the reliability of blood tests and urged their use in paternity actions. *See, State, on Behalf of Ortloff v. Hanson*, 277 N.W.2d 205 (Minn. 1979); *Hepfel v. Bashaw*, 279 N.W.2d 341 (Minn.1979); *Benson v. LaBatte*, 288 N.W.2d 684, 685 (1979). In 1980, the legislature enacted the Parentage Act, Minn. Stat. §§ 257.51 to 257.74, which is modeled on the Uniform Parentage Act. Act of April 23, 1980, ch. 589, 1980 Minn.Laws 1070. Section 257.55, subd. 1(a) provides that a man is presumed to be the natural father of a child born to his wife during their marriage; section 257.57, subd. 1, provides that a child, his natural mother or a man presumed to be his father under section 257.55, subd. 1(a) may bring an action to declare the existence or nonexistence of the presumed father and child relationship; and section 257.62 provides that a court may, and upon request of a party in such an action, shall require the mother, child and alleged father to submit to blood tests. These statutes clearly evince that the present public policy of this state is to encourage use of such evidence when paternity is in issue. Indeed, several years prior to enactment of the Parentage Act, this court held that blood tests had properly been admitted in an action for dissolution of a marriage to rebut the presumption of legitimacy accorded a child born during the marriage. *Hanson v. Hanson*, 311 Minn. 388, 249 N.W.2d 452 (1977).

Admittedly, *Hanson* differs from this case because the petitioning husband there had at all times denied that he was the child's father. Here the trial court viewed appellant's sworn statements that he was the child's father and his assumption of a parental role during the first 14 months of her life as conduct which estops him from asserting that he is not in fact her father. A few courts have held that estoppel should be invoked if the evidence establishes that a husband represented to his wife's child that the husband was the child's father, that the husband intended the representation to be accepted and acted upon by the child, that the child relied upon the representation and treated the husband as his father, and that

the child was ignorant of the true facts. *See, Clevenger v. Clevenger*, 189 Cal.App.2d 658, 11 Cal.Rptr. 707 (1961); *In re Marriage of Valle*, 53 Cal.App.3d 837, 126 Cal.Rptr. 38 (1975); *In re Marriage of Johnson*, 88 Cal. App.3d 848, 152 Cal.Rptr. 121 (1979). *See also, Myers v. Myers*, 39 N.C.App. 201, 249 S.E.2d 853 (1978), *disc. rev. denied*, 296 N.C. 736, 254 S.E.2d 178 (1979); *Chambers v. Chambers*, 43 N.C.App. 361, 258 S.E.2d 822 (1979). Other courts have refused to apply estoppel against a husband who was not the biological father of the child in cases in which the wife sought to obtain child support. *R. D. S. v. S. L. S.*, 402 N.E.2d 30 (Ind.App.1980); *Remkiewics v. Remkiewics*, 180 Conn. 114, 429 A.2d 833 (1980).

■ The facts in this case do not permit estoppel. It is clear that appellant assumed a parental role during the relatively short period the parties lived together, but he did not adopt Charity and a child so young could not have given thought to the nature of her relationship to appellant and could not have relied on any representation inferable from his conduct. In the absence of estoppel, appellant was free to terminate the responsibility he had assumed if he is not in fact the child's biological or adoptive father. *See, In re Besondy*, 32 Minn. 385, 20 N.W. 366 (1884); *Rosen v. Hursh*, 464 F.2d 731 (8th Cir. 1972); Annot., 90 A.L. R.2d 583, 589 (1963). In light of his decision to do so, requiring further reliable evidence on the issue of whether appellant is the child's father may well be in her best interests also. *Cf. Hepfel v. Bashaw*, 279 N.W.2d 342, 346 (1979).

We remand with directions that the provisions of the judgment of dissolution relating to appellant's paternity of Charity, his right to visitation and his duty to support her be suspended for a period of 60 days. During that time the parties and Charity shall submit to blood tests if appellant will pay their cost. If such tests are obtained, appellant may furnish their results to the trial court, who shall consider them together with the other evidence on the issue of whether appellant is Charity's biological father and thereafter either issue new find-

ings of fact and conclusions of law relevant to that issue or reaffirm the suspended provisions. If appellant does not submit blood test results to the trial court within 60 days, however, those provisions of the original judgment will again be effective.

Remanded with directions.