The facts essential are set forth in the opinion.
This case was before this Court at Fall Term, 1922. (See 184 N.C. 150.)
The court below, in that case, nonsuited the plaintiff, and a new trial was granted by this Court. Adams, J., for the Court, clearly and concisely states the law applicable, and then the facts on which a new trial was granted, as follows: "Inspection of the record and examination of the briefs filed by counsel lead to the conclusion that the controversy as to the alleged acceptance should have been submitted to the jury. There is evidence tending to show that on 6 February the plaintiff signed and delivered to the defendant's salesman two orders for shoes, one of which was to be filled soon thereafter, and the other 25 July; that the defendant acknowledged the receipt of these orders, and informed the plaintiff that they should receive prompt attention; that the custom of the trade at that time required of the defendant acceptance or rejection of the orders within eight or ten days; that the shoes described in the first order were shipped in the month of February, and that there was no further communication concerning the order until 27 June, when the defendant wrote the plaintiff that it was `receiving the defendant's preferred attention,' and requested additional information as to the plaintiff's financial condition; that subsequent correspondence took place between them, resulting in the defendant's cancellation of the order. It is unnecessary to recapitulate the contentions of the parties, for the reason that the evidence, in our opinion, is of sufficient probative force to justify its submission to the jury on the question of the defendant's acceptance of the order. Of course, we express no opinion on the merits. The judgment of nonsuit must be set aside and the controversy submitted to the determination of another jury."
The following issues were submitted to the jury:
"1. Did the plaintiff, T. C. May Company, order from the defendant, The Menzies Shoe Company, through the defendant salesman, C. W. Daniel, the bill of shoes dated 6 February, 1919, subject to the defendant's acceptance in due course of business? Answer: `Yes.'
"2. Did the defendant accept the said order and thereby contract to ship the said bill of shoes at price quoted on said date? Answer: `Yes.'
"3. What, if any, damage has plaintiff sustained by reason of any breach of said contract? Answer: `$948.70 and interest from date of attachment.'"
The counsel and the parties to the action agreed that the court answer the first issue "Yes."
There are twenty-six exceptions. We have given each of them careful and thorough consideration, and will not consider them seriatim, but will consider the main questions involved, which are covered by the exceptions. *Page 146 
The real contest before the jury was the acceptance by the defendant of plaintiff's order and damages. The validity of the attachment we will consider later.
The witness F. L. Bell, for plaintiff, was asked the following question: "Will you state to the jury the exact contract between the T. C. May Company and The Menzies Shoe Company, as made by you and Mr. Daniel?" The defendant excepted. This exception cannot be sustained.
The court below is given large discretionary power as to the conduct of a trial. Bowman v. Howard, 182 N.C. 662; Banking Co. v. Walker,121 N.C. 115; Shober v. Wheeler, 113 N.C. 370; S. v. Anderson,101 N.C. 758; Cheek v. Watson, 90 N.C. 302, and Brooks v. Brooks, ib., 142. This discretion frequently has the effect of shortening trials and arriving at the main gist of the case.
The witness F. L. Bell was permitted to answer the question, and the record states: "Thereupon introduced the duplicate order which was left with plaintiff by C. W. Daniel, salesman for The Menzies Shoe Company, and also the slip and rider attached thereto."
Curtis W. Boyce, the credit manager of defendant company, in his deposition, admits that this order and rider was received at the home office at Milwaukee, Wisconsin, on 10 February, and witness (Boyce) identified plaintiff's Exhibits 1 and 2, which were correct copies of Exhibits 1 and 2 attached to the deposition, and which carried the rider. Boyce further testified that the traveling salesman had full authority to attach the rider to the order.
The first issue, answered by consent, admits the contract, and the only question was the acceptance. A liberal construction of the answer, and further answer, is to like effect. The sixteenth section of the further answer says: "It is true (italics ours) that the plaintiff company gave to C. W. Daniel, traveling salesman for The Menzies Shoe Company, an order, dated 6 February, 1919, which order was mailed to the factory and was subject to acceptance by the company and satisfactory credit showing on the part of the plaintiff."
The evidence of A. F. May for plaintiff, and Curtis W. Boyce for defendant, shows that to the order (the first shipment, $93, was sent in April and paid for in June, there was no controversy about) was attached a slip of paper, which was as follows: "We protect you. If we can reduce prices before this order is shipped, we will bill these shoes at the reduced prices. In consideration of this guarantee, no part of this order is subject to cancellation."
It is a well-settled rule of evidence, subject to certain exceptions, that parol testimony is not admissible to contradict, explain, vary, or add to *Page 147 
the terms of a written contract. Many authorities, with interesting quotations on this subject, are cited by Walker, J., in Patton v. LumberCo., 179 N.C. 103.
This principle does not apply from the facts here. The written evidence was introduced, and the admissions all show that there was no controversy about the terms of the contract.
The next main exceptions are to the testimony of the witness F. L. Bell, and other witnesses for plaintiff, on the question of acceptance of the order on the second issue.
F. L. Bell was asked: "I will ask you, from your knowledge as a shoe man, how long is a reasonable time for the acceptance or rejectment of an order given under the circumstances under which you gave this order?" (Defendant objected; overruled; defendant excepted.) Answer: "About ten days."
F. L. Bell had previously stated that he was in the employ of the plaintiff, and, among other things, it was his duty to buy shoes.
W. J. Batchelor testified that he had been in the general mercantile business in Nashville for several years past. He was asked: "You know the custom of the trade with respect to accepting or rejecting orders?" Answer: "I know our experience." (Defendant objected; overruled; exception.) Answer: "From ten to thirty days."
G. N. Bissette testified that he had been working in Nashville for about twenty-eight years, and that he knew the general custom of the trade with respect to accepting or rejecting orders; that a reasonable time for a Milwaukee concern to accept or reject an order from a Spring Hope merchant would be twenty days. (This evidence was not objected to.)
A. M. Baines testified that he had been in the mercantile business for about eighteen years, and that he knew the general custom of trade in regard to time required for accepting or rejecting orders, and that it was fifteen to thirty days. (This evidence was not objected to.)
On cross-examination, all these witnesses testified that their experience had been as retail merchants and not as wholesalers and manufacturers of shoes.
There is no exception to the testimony of G. N. Bissette and A. M. Baines on this evidence as to general custom and trade, with respect to accepting or rejecting orders.
"Appellant is required to set out his assignments of error in the record, and discuss them in his brief, or they will not be considered by the Supreme Court on appeal, under the rules regulating appeals." Bunn v.Dunn, 185 N.C. 108.
It will be noted that Curtis W. Boyce, in his evidence, stated, without objection: "That in his office he endeavored to pass on at once orders *Page 148 
immediately, and in the event credit could not be extended, customers were notified; however, in connection with future orders, it was not the practice to pass on such orders at once; that there was no special limited time in which the orders should be accepted or rejected; that he had been with The Menzies Shoe Company approximately two years, which was his only experience in the shoe manufacturing business; that he knew of no custom of trade which limited the time for accepting or rejecting orders."
Albert W. Minton, chief clerk for R. G. Dun Co., Milwaukee branch, witness for defendant, without objection, testified: "The length of time to get a report to Milwaukee on a resident of Spring Hope, North Carolina, a small town near the county-seat of Nash County, would depend upon the condition under which the information would have to be obtained, and to see whether the company had a satisfactory report on file — whether the information on file was not sufficiently late to base a report and require a new report. If the case of a customer should show a weak financial condition or representation, his company made an effort to substantiate by a new investigation the report which it had on file, and that necessitates time running all the way from a week to a month or more."
C. B. Curtis, Milwaukee manager for the Credit Clearing House, a witness for defendant, without objection, testified: "They obtain verified financial statements and trade information from various concerns of whom the party being investigated makes his purchases. These investigations in these services extend all over the United States. It would take, possibly, a month or six weeks to get a report on a Spring Hope merchant to be furnished to a Milwaukee manufacturer."
Adolph A. Rinker, Bradstreet Company branch agent at Milwaukee, Wisconsin, testified that "It might take a week; it might take a month, and probably longer."
Elizabeth Stetter, assistant to The Credit Men of The Munn, Buch 
Weldon Shoe Company, of Milwaukee, Wisconsin, testified: "To get a report from Spring Hope to Milwaukee it would take from ten to seventy days, depending upon the length of time customers had been in business and their willingness to give information to commercial agencies."
D. L. Sawyer, a credit manager of a Milwaukee concern, said: "Reports from that section of the country have been delayed from ten to seventy-seven days."
Further facts, which are undisputed in the record, are: Usually in the spring, orders were given for shoes to be shipped later for fall trade. The bill of shoes was ordered on 6 February, 1919, to be shipped 25 July, 1919. The defendant received the order on 10 February at *Page 149 
Milwaukee, Wisconsin, and did not write the plaintiff until 27 June in regard to the order, and in that letter asked for further credit information. They had four months and seventeen days in which to investigate, to accept or reject the order. The order was cancelled on 25 August, 1919, by defendant, who notified plaintiff in the following letter:
25 AUGUST, 1919.
THE T. C. MAY Co., Spring Hope, N.C.
GENTLEMEN: We are in receipt of your letter of 18 August, in regard to the order given our salesman, Mr. Daniel, under date of 6 February.
We enclose a copy of our letter of 30 July, which was a reply to yours of 24 July. Inasmuch as we did not hear from you in reply to this letter, we canceled the order. We could not hold the order longer, with the prices in effect last February.
Yours very truly,
THE MENZIES SHOE COMPANY.
From the evidence unobjected to, and the undisputed facts, the jury could have answered as they did the second issue "Yes." "Did the defendant accept the said order and thereby contract to ship the said bill of shoes at price quoted on said date?" The errors complained of, if any, were harmless and not reversible error. Wilson v. Suncrest Lumber Co., ante, 56, and cases cited.
We prefer, however, to consider the law applicable to these exceptions. We have set forth the evidence fully, as this is an important matter. Merchants, in trading with each other, should know their rights and responsibilities. Settled law often has the effect of making people certain and careful in their dealings. Honesty in dealing with each other at home, with those of other States, and with the nations of the earth, is the golden cord to bind us together. Good faith — keeping of contracts.
When no time is fixed in the contract, as in this case, to accept or reject an order given a salesman, or drummer, the question arises, what is the custom of the trade, or what is reasonable time? The exceptions that appear in the record will determine what class or kind of evidence is permissible.
We think the evidence admissible. It shows that the men who gave their opinion were merchants of long standing, well acquainted with the custom and usage of the mercantile business. If they could not give their opinion, the hardship would almost be a denial of justice.
"On a question of usage in a particular trade or business, the opinion of persons experienced therein will be received in evidence . . . It is held that a witness is competent to testify as to usage whose only *Page 150 
knowledge of it is derived from his own business, if that has been sufficiently extensive and long continued." Rogers on Expert Testimony (2d Ed.), sec. 117. The probative weight to be accorded to the estimate of witnesses of this kind is entirely a matter for the jury.
The exceptions in regard to the witnesses testifying to the difference in prices 6 February, the date of contract, the date of the receipt of the shipments, on the third issue as to damages, cannot be sustained. This was a question of fact for the jury. If the difference in the price on 6 February and the price of the shoes actually charged to the plaintiff was incorrectly stated by plaintiff's witnesses, the defendant could have introduced evidence to deny the same. The judge's charge on the third issue as to damages was clear and explicit, and no exception was taken to it. The record shows no evidence to the contrary, and the jury had the whole matter before them.
The question of a new contract was left to the jury. The judge charged fairly and clearly on this aspect of the case, and the exception cannot be sustained. It was a question of fact for the jury.
The exception to the validity of the attachment presents the most serious question in the cause.
We do not think that the case of Carson v. Woodrow, 160 N.C. 143, cited by defendant, is applicable to this case. In that case the warrant of attachment was sued out in the Superior Court of Nash County and purported to issue to the counties of Nash and Edgecombe, and addressed to a constable or other lawful officer of Edgecombe, and executed by a constable in Edgecombe County. The warrant of attachment was in blank, save the clerk's signature attached thereto, affidavits, etc., all in blank, and delivered to plaintiff's attorney, who filled them in. The act (C. S., sec. 805) says: "The warrant shall be directed to the sheriff," etc. The act was not complied with, in form or substance. Hoke, J., in that case, very properly said: "We are of the opinion that the attachment, writ and seizure of property under it were invalid." But in Temple v. Hay Co., 184 N.C. 241,Hoke, J., says: "Under the statute applicable, the process of attachment issuing from the Superior Court should be addressed to the sheriff of the county and executed by him or one of his duly authorized deputies. Carson v. Woodrow, 160 N.C. 144. It appearing, however, that the writ was in fact executed by a duly authorized deputy of the sheriff, the case is well within the powers of amendment possessed by the court, and which should always be liberally exercised with a view of permitting a determination of the cause on the real issues involved in the controversy."
The facts are different here. The record shows that the affidavit had all the formal and substantial facts set forth necessary to obtain a *Page 151 
warrant of attachment, and duly verified by F. D. Bissette, who signed his name at the end of the affidavit. At the beginning was the following: "A. F. May, for the T. C. May Company, of the county of Nash, being duly sworn, says." This was not sworn to by May, but by Bissette, showing that Bissette, and not May, made the affidavit. This seems to be a patent clerical error. Bissette, later in the cause, as shown by the record, made an affidavit, covering all material allegations necessary to base an order for service of summons on defendant by publication, which was a reiteration and more contained than in affidavit he made as the basis of the warrant of attachment.
In Sheldon v. Kivett, 110 N.C. 410, Clark, J., said: "In the affidavit by the agent it is not required that the reasons why it was not made by the principal should be set out, as in the verification of pleadings."
The warrant of attachment was issued to the "Sheriff of Nash County." The warrant of attachment says: "It appearing by affidavit (italics ours) to the officer granting this warrant," etc.; then comes the usual form and substance in such warrants, signed by the clerk. There are other minor irregularities objected to by the defendants, as appears by the record, but no substantial irregularity as would make the attachment invalid or void.
"The judge or court may, before and after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party; by correcting a mistake in the name of a party, or a mistake in any other respect; by inserting other allegations material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the fact proved. When the proceeding taken by a party fails to conform to law in any respect, the trial judge may permit an amendment of the proceeding so as to make it conformable thereto." C. S., sec. 547.
"The court or judge shall, in every stage of action, disregard any error or defect in the pleadings or proceedings which do not affect the substantial rights of the adverse party; and no judgment may be reversed or affected by reason of such error or defect." C. S., sec. 549.
"Where, in an attachment, it appears from the whole record that the statute has been substantially complied with, the action will not be dismissed nor the attachment dissolved." Best v. Mortgage Co., 128 N.C. 351;Currie v. Mining Co., 157 N.C. 209. See, also, thorough discussion of this whole matter by Walker, J., in Page v. McDonald, 159 N.C. 41, etseq.; Temple v. La Berge, 184 N.C. 253.
On the whole record, we can find
No error. *Page 152