NORFOLK SOUTHERN RAILROAD COMPANY v. ALBEMARLE
FERTILIZER COMPANY.

(Filed 10 September, 1924.)

**Carriers—Railroads—Custom — Evidence — Demurrage — Through Ship-
ments.**

In an action by a railroad company to recover demurrage on certain
shipments made by the consignor to himself and reshipped over another
line, evidence is competent to show that it was the custom established
between the parties that the consignor mark the cars by a certain method
to show destination over the connecting carrier, and thus transport it
over the connecting carrier as a through shipment, and that therefore he
was not required to handle the shipment at the transfer point.

APPEAL by plaintiff from *Devin, J.,* February Term, 1924, of
PASQUOTANK.

This is a civil action brought by plaintiff, a common carrier, against
the defendant for demurrage and war tax.

The plaintiff contends that the defendant, a fertilizer company, had
a manufacturing plant on the outskirts of Elizabeth City. That it
shipped from its plant to itself carload lots of fertilizer to the wharf
of the North River Line, on track No. 1 of plaintiff, a local shipment
on special contract, and it was defendant's duty to unload same in the
free time period allowed by law, which was not done, and this suit is
instituted for the demurrage. That bills of lading were issued by North
River Line showing that plaintiff had performed its special contract.

The defendant admits the shipments, but denies its liability for any

demurrage. That by custom, well known to the parties, method of doing business and conduct of the parties, the defendant contended that these cars were sent from the defendant's plant consigned to persons along the North River Line, and that it was a continuous freight shipment. That on the side of each car were placed printed forms, and marked on these cards was "To the North River Line for the different consignees." The names of the consignees were written on the cards, etc. When the cards were put on the cars the plaintiff took them to the North River Line, and the defendant had nothing further to do with the cars, and this was the custom well known to plaintiff. The cards were written for the purpose of guiding the destination, and the plaintiff's yardmaster knew exactly what to do. The defendant paid the plaintiff for the charge from defendant's plant to North River Line, and paid the North River Line for the freight on the cars that went over their line. That the shipments were through and not local. The method, custom and manner of doing business between all the parties showed the fertilizers were shipped from defendant's plant to their ultimate destination.

The controversy was for demurrage on twelve cars, eight cars delivered on track No. 1 at the North River Line, and demurrage on four cars delivered to the defendant at its plant loaded with fish scrap. As to the four cars delivered with fish scrap, it was denied that they remained over free time, and the jury so found. This was a question solely of fact. The eight cars on which demurrage was claimed we will consider. The positive evidence is that they were unloaded beyond free time.

The verdict of the jury was against the plaintiff. It excepted, assigned numerous errors and appealed to the Supreme Court.

*Thompson & Wilson for plaintiff.*
*Aydlett & Simpson for defendant.*

CLARKSON, J. The controversy between the contending parties was as to whether the shipment of the eight cars was a continuous or through freight shipment or a local shipment. Was there legal evidence sufficient to go to the jury that it was a continuous or through freight shipment? The plaintiff contending and producing evidence on the trial and submitting prayers for instructions that it was not a continuous or through shipment, but local and it had performed its special contract and demurrage should be allowed for admitted delay over free time allowed by law, and on all the evidence it should recover, and the defendant contending and submitting evidence to the contrary.

The testimony of J. H. Leroy, bearing on the question was as follows: "I am manager of the Albemarle Fertilizer Company. I was shipping fertilizer by the North River Line in January and February, 1921, and shipped these cars that have been testified to here. We loaded them in cars at our plant. We have printed forms which we place on the side of the car and it is marked on that printed card 'To the North River Line for the different consignees,' and when that card is found there the Norfolk Southern man takes it to the North River Line. After we load the car at the plant we have nothing at all further to do with it. The North River Line issued the bills of lading. I mean that the card tacked on the cars had the direction to the North River Line and the name of the consignee at some point on the North River Line written on the card also. We had these cards written for that purpose and the yardmaster knows exactly what to do with that. . . . The custom is, as I said, that we load these cars, put the tag or placard on the cars and the yardmaster takes them and is governed by that card as to where to take them, North River Line, whether they go south on the Norfolk Southern or whether going north."

The court below gave the contentions and charged the jury as follows: "Where a railroad company receives cars for through freight shipment to consignees beyond its line and it is necessary to transport cargo between connecting lines it would not be the duty of the consignor to unload and release cars at the point of transfer, and if you find by reason of the method of doing business between plaintiff and defendant that the defendant merely placed a placard on its loaded cars showing the route and destination, and the plaintiff took the cars without further instructions and transported the cars as far as its line extended, and that it was the intention of the parties as shown by such conduct and custom that the plaintiff should receive and transport the cars as one of the carriers in continuous shipment, then nothing else appearing, though no bill of lading or other written contract was issued, it would be a continuous shipment and would not be obligatory on the consignor to unload the cars at the point of transfer. But, if you find the defendant, by paying switching charges to the Norfolk Southern Railroad Company and by taking a bill of lading from the North River Line, recognized this as a separate and distinct shipment or separate and distinct steps of the transportation of its freight, then the duty would rest upon the defendant to unload and release the cars and to apply the rules and regulations with respect to the demurrage."

We think the evidence excepted to by plaintiff on the trial below was properly allowed. There was no error in the refusal of plaintiff's prayers for instruction. There was sufficient legal evidence to be submitted to the jury and they have found for the defendant.

Defendant's evidence tended to show that a usage or custom prevailed between all the parties to the transaction, to treat the dealings with plaintiff as a through freight shipment, and defendant had nothing further to do with the shipment when it was delivered to plaintiff. The court below allowed this evidence, and we can see no error.

In *McDearman v. Morris,* 183 N. C., 78, it is said: "Where there is a well known usage or custom which obtains in a given trade or business, it is presumed that all who are engaged in said trade or business where it prevails contract with a view to such usage or custom, unless the presumption is excluded by agreement of the parties. *Hazard v. New England Marine Ins. Co.,* 8 Pet., 557; 27 R. C. L., 162, and cases cited in note." *Oil Co. v. Burney,* 174 N. C., 382; *May v. Menzies,* 186 N. C., 149.

We do not think the cases cited in plaintiff's brief applicable in the present case.

For the reasons given, there is

No error.